VAN ROYEN *v.* LACEY ET AL.

[No. 423, September Term, 1970.]

*Decided May 11, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Joseph A. Mattingly* for appellant.

*Charles Norman Shaffer,* with whom were *Shaffer, Mc-Keever & Fitzpatrick* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

On December 4, 1970, the Circuit Court for Montgomery County (Shearin, J.) sustained the appellees' demurrer to a declaration filed by Irene Fetty Van Royen (appellant) in which she alleged a conspiracy among the defendant-appellees to defraud her by means of certain real estate transfers. On December 10, 1970, judgment was entered for the appellees, Robert H. Lacey, Jr., Marianne K. Lacey, his wife, Rose F. Kelly, his mother-in-law and Robert A. Hickey, a brother-in-law.

. The events culminating in the present appeal began in December, 1965, when the appellant gave $15,000 of her money to appellee Robert H. Lacey, Jr. (Lacey) to be invested on her behalf. Instead, Lacey converted the money to his own use. Upon discovering the defalcation, the appellant sued Lacey for conversion in July, 1966.

In January, 1967, while the suit for conversion was pending and unbeknownst to the appellant, Lacey, his wife, and his mother-in-law conveyed a house in Montgomery County to Lacey's brother-in-law for no consideration. The house and property had been owned by Lacey, his wife, and his mother-in-law as joint tenants. Immediately thereafter, the brother-in-law reconveyed the property to Marianne K. Lacey and her mother Rose F. Kelly, again without any consideration passing between the parties. The result contemplated by these transfers was to divest Lacey of any interest in the property. On the same day, January 7, 1967, Marianne K. Lacey and Rose F. Kelly placed a $20,000 deed of trust on the property, replacing a then existing deed of trust for $16,155.-22. The difference of $3,844.78 was spent by Marianne K. Lacey and Rose F. Kelly, apparently for household expenses. (Lacey, his wife, and his mother-in-law, along with the Lacey children, all lived in the house in question.)

In July, 1967, the appellant was awarded a $15,900 judgment against Lacey in her suit for the conversion of her $15,000, but she could find no assets from which to satisfy the judgment. During the summer of 1968, the appellant learned of the above described real estate transfers and filed an equity suit to have the two conveyances set aside as fraudulent. In December, 1969, Judge James H. Pugh, sitting as a chancellor in equity, determined that the conveyances had been fraudulently made, declared them null and void, and ordered the deeds in question set aside. We affirmed in *Lacey v. Van Royen,* 259 Md. 80, 267 A. 2d 91 (1970).

On August 13, 1970, the appellant filed a declaration in the Circuit Court for Montgomery County alleging that the appellees (Lacey, his wife, his mother-in-law, and Robert A. Hickey) had fraudulently conspired to prevent the appellant from satisfying the judgment she had received in her original suit against Lacey by means of the real estate transfers which had been set aside in the equity suit. In an amended bill of complaint, the appellant demanded judgment of $10,000 compensatory and $100,000 punitive damages from each of the appellees. The trial court sustained the appellees' demurrer without leave to amend and entered judgment against the appellant for costs on December 10, 1970. This appeal followed.

The question we must decide is whether a general, unsecured creditor who has no lien on the debtor's property, nevertheless has a sufficient legal interest in the property to enable her to maintain an action for conspiracy against the debtor and his co-conspirators who had fraudulently transferred the property in order to hinder, delay, or defraud that creditor. For the reasons which follow, our answer is in the negative, and we affirm the judgment of the lower court.

It would appear to be well settled law in this State that a conspiracy, standing alone, is not actionable. In order for a civil action for conspiracy to be maintained,

there must be, in addition to a confederation of two or more persons, (1) some unlawful act done in furtherance of the conspiracy, and (2) actual legal damage resulting to the victim-plaintiff. *Damazo v. Wahby,* 259 Md. 627, 638, 270 A. 2d 814 (1970) ; *Kimball v. Harman,* 34 Md. 407, 409-410 (1871).

In the equity suit to set aside the conveyance among the several appellees, the chancellor ruled that the transfers should be set aside as violative of either Section 4 (conveyance by insolvent) or Section 7 (conveyance made with intent to defraud) of the Uniform Fraudulent Conveyance Act. Maryland Code (1971 Repl. Vol.), Art. 39B, §§ 4, 7. We specifically affirmed that ruling on appeal. *Lacey v. Van Royen, supra,* at 94. It would appear, then, that these conveyances were an "unlawful act" within the meaning of *Kimball v. Harman, supra,* and satisfy the first prerequisite to maintaining a civil suit for conspiracy.

However, it is in her attempt to prove "actual legal damage" that the appellant's case falls short. She alleged in her declaration that the fraudulent conveyances by the appellees reduced her lien on the property by $1,-281.59. She arrived at that figure by taking one-third of the $3,844.78 surplus realized by Marianne K. Lacey and her mother Rose F. Kelly from their re-financing of the property at the time of the conveyances to and from the brother-in-law, Robert A. Hickey, on January 7, 1967, reasoning that the decision in *Lacey v. Van Royen* had the effect of restoring Lacey's undivided one-third interest in the property (and presumably a one-third interest in the amount of the surplus). Specifically, she states as follows in her brief :

> "The appellant contends that when she had gotten a judgment against Robert H. Lacey, Jr. for $15,900.00 [in the suit for conversion], she also obtained an inchoate lien against his real estate in that amount. That by instituting the fraudulent conveyance suit [the equity action]

and prevailing in it she reduced her inchoate lien to a true legal lien. That if she can now prove in a third suit that the conspiracy of the defendants caused her lien to be reduced by some $1200.00 in value that she has a cause of action for this wrong which is properly alleged in the amended declaration."

Assuming, *arguendo*, the validity of the appellant's contention, it is manifest that she obtained no legal lien on the property in question until at least July 14, 1967, the date of the judgment in her suit against Lacey for conversion. Code (1966 Repl. Vol.), Art. 26, §§ 20, 21; Maryland Rule 620 a. This was, of course, some six months after the date of the conveyances which form the backdrop for the present conspiracy action. At the time of the fraudulent transfers, the appellant was a general, unsecured creditor of the appellee Lacey. As of January 7, 1967, she had no more than an inchoate lien on the property in question.

In such a situation, the accepted rule in this country is that a general creditor, without a lien, has no legal right or interest in the debtor's property and cannot be legally injured by any action by way of conspiracy on the part of the debtor and others to dispose of his property in order to evade payment of his general obligations. *Adler v. Fenton,* 65 U. S. (24 How.) 407, 410 (1860). Unless the creditor possesses a lien at the time of the wrongful act, he (or she) has no legal right in the property affected, and cannot be said to have suffered the "actual legal damage" contemplated by *Damazo v. Wahby* and *Kimball v. Harman. Adler v. Fenton, id.* Cf. *Findlay v. McAllister,* 113 U. S. 104, 114-115, 5 S. Ct. 401 (1885), a case in which the creditor had a lien on the property. See generally, 16 Am.Jur.2d, *Conspiracy,* § 51; 15A C.J.S., *Conspiracy* § 9b.

The reasoning behind the holding of *Adler v. Fenton* and the cases which have followed it is that the law sets out definite guidelines as to how and when the debtor's

property ceases to be subject to his control and direction, and becomes, instead, subject to the rights of his creditor. In Maryland, a creditor obtains a vested interest in the form of a lien against the debtor's realty at the time of judgment. Until that time, the common law rule is that the creditor has no legally vested interest in the property in question. The analysis of a creditor's position prior to obtaining a judgment was discussed in *Lamb v. Stone*, 11 Pick. 527 (Mass. 1831), a case in which a plaintiff-creditor brought suit against one who had purchased the debtor's goods in order to help him to evade payment of his debt. In that case, quoted by the United States Supreme Court in *Adler v. Fenton*, the Massachusetts court said:

> "* * * To maintain an action for the *deceit* or *fraud* of another, it is indispensable that the plaintiff should show not only that he has sustained *damage* and that the defendant has committed a *tort*, but that the *damage* is the clear and necessary consequence of the *tort*, and that it can be clearly defined and ascertained. What damage has the plaintiff sustained by the transfer of his debtor's property? He has lost no *lien*, for he had none. No attachment has been defeated, for none had been made. He has not lost the custody of his debtor's body, for he had not arrested him. He has not been prevented from attaching the property or arresting the body of his debtor, for he never had procured any writ of attachment against him. He has lost no claim upon or interest in the property, for he never had acquired either. The most that can be said is that he intended to attach the property and the wrongful act of the defendant has prevented him from executing this intention. * * * On the whole, it does not appear that the *tort* of the defendant caused any damage to the plaintiff. But even if so, yet it is too remote, indefinite

and contingent, to be the ground of an action."
(Emphasis as in original) 11 Pick. 534-535.

This common law rule has, of course, been modified by the provisions of Maryland's Uniform Fraudulent Conveyance Act, to the extent that it provides that where a conveyance is fraudulent as to a creditor, that creditor, once his claim has matured, may have the conveyance set aside or may disregard the conveyance and attach or levy execution upon the property conveyed. Code (1971 Repl. Vol.) Art. 39B, § 9(1)(a) and (b). The appellant has had the fraudulent conveyances set aside, and is free to pursue whatever additional legal remedies are available to her to satisfy her $15,000 judgment against Lacey. However, until the time that the appellant secured her judgment against Lacey, he was free, subject to the restrictions of Article 39B of the Maryland Code, to do with his share of the property what he would. The appellant's inchoate interest in the property was sufficient to prevent a fraudulent conveyance of that property because of the terms of the Maryland statute; it is not, however, sufficient to maintain a suit for conspiracy to defraud. As was stated in *Adler v. Fenton*:

> "* * * In the absence of special legislation, we may safely affirm, that a general creditor cannot bring an action on the case against his debtor, or against those combining and colluding with him to make dispositions of his property, although the object of those dispositions be to hinder, delay, and defraud creditors." 65 U. S. (24 How.) 413.

*Judgment affirmed; appellant*
*to pay costs.*