Donald L. SUMMERS, Appellant/Cross–Appellee,

v.

William E. HAGEN, Appellee/Cross–Appellant.

Nos. S–3589, S–3617.

Supreme Court of Alaska.

May 28, 1993.

Jeri L. Bidinger and Susan D. Mack, James T. Stanley Corp., P.C., Anchorage, for appellant/cross-appellee.

Woody Brooks, Bradbury, Bliss & Riordan, Fairbanks, and A. Michael Zahare and Maryanne Boreen, Bradbury, Bliss & Riordan, Anchorage, for appellee/cross-appellant.

Before MOORE, C.J., and
RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

MOORE, Chief Justice.

This dispute arises from an action brought by William E. Hagen against Donald L. Summers, alleging that Summers participated in a fraudulent conveyance scheme with Jerald C. Briske, a debtor of Hagen's. After Summers consented to entry of judgment on four fraudulent conveyance counts, both parties moved for partial summary judgment on the remaining count, conspiracy to fraudulently convey property, a novel theory of liability in Alaska. The superior court ruled in favor of Hagen and held a trial on the issue of damages.

Summers appeals the grant of partial summary judgment on two grounds. First, he argues that no cause of action exists for participating in a scheme to fraudulently convey property. Next, Summers argues that even if the cause of action exists, the superior court should not have construed his consent to entry of judgment on the fraudulent conveyance counts as a stipulation to the factual assertions therein. Hagen cross-appeals on the issues of damages and attorney fees. We reverse, holding that a cause of action exists but that Sum-

mers' consent to entry of judgment did not bind him to the factual assertions in Hagen's complaint.

## I. FACTS AND PROCEEDINGS

In 1984 Hagen sold Briske a parcel of real property located in Fairbanks. In exchange for the property, Briske gave Hagen a deed of trust note to secure the principal amount of $200,000. Briske defaulted on the note in November 1986. Shortly before defaulting on his obligation to Hagen, Briske executed fourteen quitclaim deeds conveying seventeen parcels of real property.[1] The grantees included members of Briske's family and Summers, Briske's long-time business partner. Briske made each of the conveyances in consideration of ten dollars. Summers alleges the conveyances to him were made for valuable consideration.

In early 1987, Hagen brought an action against Briske to reduce the note to judgment and to foreclose the deed of trust.[2] In May 1987, Hagen obtained a default judgment against Briske for $182,014.84.

In August 1987, Hagen brought this action in superior court against Briske, the other nominal grantors and Summers. Hagen asked the court to: (1) set aside Briske's conveyances to Summers as fraudulent conveyances under the Alaska Fraudulent Conveyance Act, AS 34.40.010 et seq.; (2) enter a decree against the properties attaching Hagen's judgment lien against Briske; and (3) award damages against Summers for conspiring in the fraudulent conveyance. Hagen identified four parcels of land that Briske allegedly had fraudulently conveyed to Summers. Hagen alleged Briske made these conveyances to defraud Hagen and other creditors by making Briske insolvent. Hagen based his claim for damages caused by the fraudu-

1. The actual grantors were Briske alone, Briske and Mrs. Briske, or the Peanut Farm, Inc. (a now dissolved Alaska corporation).

2. The foreclosure action was dismissed as a result of a settlement between Hagen and Alaska Mutual Bank (which later became Alliance

Bank), another lienholder on the property. Hagen disputed the validity of a subordination agreement purporting to subordinate his deed of trust to Alaska Mutual Bank's deed of trust. In the settlement, Hagen sold his deed of trust to Alaska Mutual Bank for $150,000.

lent conveyances on a civil conspiracy theory.

In January 1988, during the pendency of the lawsuit, Briske filed for protection under Chapter 11 of the Bankruptcy Code. The superior court promptly stayed Hagen's action as to Briske as required under 11 U.S.C. § 362(a). The court allowed the case against Summers to continue.

On April 13, 1988, Hagen instituted an adversary proceeding against Briske and Summers in the bankruptcy case. In the complaint, Hagen asked the court to declare the conveyances of the four parcels void and to find that Briske's debt to Hagen was secured by those parcels.[3]

Before the superior court, Summers offered to quitclaim all properties he received in September 1986 to the respective grantors, conceding the superior court probably would find that Briske's transfers of property to him were fraudulent conveyances. Summers noted this was "not an admission of wrongdoing on [his] part." At the pretrial conference, Summers reiterated his intent to reconvey the four parcels to the grantors to moot the issues raised by the fraudulent conveyance counts of Hagen's complaint.

Hagen moved to enjoin Summers from reconveying the property to the grantors, presumably to keep them out of the bankruptcy proceeding. Briske's lawyer then advised the court that the unsecured creditors committee had moved for reconveyance of the four parcels in the bankruptcy proceeding, thus creating "a collision regarding federal and state law if [Hagen's] motion would be granted prohibiting [Summers] from conveying those properties back."

After a discussion between the superior court and the parties concerning the effect of such an action, Summers stipulated to entry of judgment on the four fraudulent conveyance counts. The court entered final judgment in favor of Hagen on those counts. The court ruled that the purported transfers of the four parcels were "fraudulent conveyance[s]" and "void against Plaintiff William E. Hagen" and that the parcels are "held by Defendant Donald L. Summers subject to the lien of the Default Judgment entered in favor of Plaintiff William E. Hagen."

Summers then moved for partial summary judgment on the remaining count of the complaint, the conspiracy claim, on the ground that Hagen's remedy was limited to voiding the transfer. Hagen opposed the motion and requested that summary judgment be entered against Summers as to liability on the conspiracy claim on the basis of his stipulation to judgment on the fraudulent conveyance counts of the complaint. The court denied Summers' motion and granted partial summary judgment in favor of Hagen. The court limited Hagen's damages to the lesser of the value of one of the parcels, Parcel IV, or the uncollected balance of the debt. Apparently, the parties stipulated at oral argument on the summary judgment motion that the property value of one of the land parcels (Parcel IV) exceeded the balance of the debt.

The sole issue at trial was the amount of the uncollected balance of Hagen's default judgment against Briske in light of Hagen's earlier settlement with the bank. The court determined that the uncollected balance, and thus the amount of damages Hagen was entitled to recover, was $73,178.73. This calculation is not challenged on appeal.

## II. STANDARD OF REVIEW

▉▉▉▉ In reviewing a grant of summary judgment, we must determine whether a genuine issue of material fact exists and, if not, whether the moving party is entitled to judgment as a matter of law. *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985). In reviewing the

---

**3.** In October 1990 we stayed the present appeal pending completion of the bankruptcy proceedings (*In re Jerald C. Briske*, No. A88–00011 (Bankr.D.Alaska, filed January 4, 1988)). On September 18, 1992, the bankruptcy court authorized Hagen to proceed in state court against Summers and his property, noting that "no ... bankruptcy stay exists with respect to Mr. Summers or his property." Based on the bankruptcy order, we ordered the stay of this appeal lifted on October 9, 1992.

trial court's findings of fact based upon a non-testimonial record, we are free to reach an independent conclusion based on the same record of undisputed facts presented below. *Yukon Equip., Inc. v. Fireman's Fund Ins. Co.*, 585 P.2d 1206, 1210 (Alaska 1978). When reviewing questions of law, we are not bound by the lower court's view; in such cases, we may apply our independent judgment. *See 22,757 Sq. Ft., More or Less v. State*, 799 P.2d 777, 778 (Alaska 1990). Our duty is to adopt the rule of law which is most persuasive in light of precedent, policy and reason. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

## III. DISCUSSION

### A. Participation in a Fraudulent Conveyance Scheme

Summers argues the superior court's grant of partial summary judgment in favor of Hagen on the issue of liability should be reversed as a matter of law. He argues that a creditor has no cause of action against a grantee of the debtor's property for participation in a fraudulent conveyance scheme. He also argues that creditors' rights should be strictly limited to the remedy provided for by the Fraudulent Conveyances Act, AS 34.40.010. Alaska Statute 34.40.010 reads in part, a "conveyance ... made with the intent to hinder, delay, or defraud creditors ... is void."

Although Summers' position is the majority rule,[4] Milton Roberts, Annotation, *Right of Creditor to Recover Damages for Conspiracy to Defraud Him of Claim*, 11 A.L.R.4th 345, 350, 359–81 (1982), we find the minority rule better reasoned. It allows one who has been legally harmed to recover damages from the party causing the harm where the existing equitable remedy of voiding the transfer is inadequate.

The Arizona Court of Appeals articulated the minority rule in *McElhanon v. Hing*, 151 Ariz. 386, 728 P.2d 256 (App.1985), *vacated in part on other grounds*, 151 Ariz. 403, 728 P.2d 273 (1986), *cert. denied*, 481 U.S. 1030, 107 S.Ct. 1956, 95 L.Ed.2d 529 (1987). In *McElhanon*, the court relied on the public policy behind the Uniform Fraudulent Conveyance Act to hold that "a lien is not necessary before there is an actionable wrong." *Id.* 728 P.2d at 263. *McElhanon* expressly relied on *Dalton v. Meister*, 71 Wis.2d 504, 239 N.W.2d 9, 17–19 (1976), which held that because the Uniform Fraudulent Conveyance Act made fraudulent conveyances of the debtor's property to the grantee a definite legal wrong, that wrong could be the subject of a civil conspiracy.[5] *McElhanon*, 728 P.2d at 263.

We hold that to prove liability for participation in a fraudulent conveyance scheme, a plaintiff must establish:

(1) An unlawful agreement;

(2) The specific intent of each participant in the scheme to hinder, delay and defraud a creditor of one who participated in the scheme;

**4.** The majority rule is

a general creditor, without a lien, has no legal right or interest in the debtor's property and cannot be legally injured by any action by way of conspiracy on the part of the debtor and others to dispose of his property in order to evade payment of his general obligations. Unless the creditor possesses a lien at the time of the wrongful act, he (or she) has no legal right in the property affected, and cannot be said to have suffered the "actual legal damage" [required to maintain a civil conspiracy claim].

. . . . .

[T]he law sets out definite guidelines as to how and when the debtor's property ceases to be subject to his control and direction, and becomes, instead, subject to the rights of his creditor.... [A] creditor obtains a vested interest in the form of a lien against the debtor's realty at the time of judgment. Until that time, the common law rule is that the creditor has no legally vested interest in the property in question.

*Van Royen v. Lacey*, 262 Md. 94, 277 A.2d 13, 15–16 (1971).

**5.** Alaska has not adopted the Uniform Fraudulent Conveyance Act. Arizona and Wisconsin have repealed it and adopted the more recent Uniform Fraudulent Transfer Act. 7A U.L.A. 136–37, 165 (Supp.1992).

For the purposes of this analysis, the differences between the Uniform Fraudulent Conveyance Act and AS 34.40.010–.130 are irrelevant. Both treat fraudulent conveyances as legal wrongs, allowing them to be set aside.

(3) Acts committed pursuant to the unlawful agreement;

(4) Damages caused by the acts committed pursuant to the unlawful agreement.

See *McElhanon*, 728 P.2d at 266.

The party against whom damages are claimed must be guilty of actual fraud, as opposed to constructive fraud. That is, [the party against whom damages are claimed] must know that the transfer will leave the debtor insolvent, that the transfer is for less than fair value, and that the purpose of the transfer is to hinder, delay, or defraud the ... creditor-plaintiff.[6]

*McElhanon*, 728 P.2d at 273.

## B. Damages

The superior court limited Hagen's damages to the lesser of the value of Parcel IV at the time of the fraudulent conveyance or the uncollected balance of the 1987 default judgment against Briske. Hagen argues this limitation was error. He argues his damages include the incidental costs of tracking down the property and attempting to set aside the fraudulent conveyance and the portion of the original debt which the fraudulent conveyance has made uncollectible. These expenses included interest on a loan from a "high-risk loan company," attorney fees, damages for emotional distress and exemplary damages.

In *McElhanon v. Hing*, the Arizona Court of Appeals discussed the appropriate damage award for participating in a fraudulent conveyance scheme. 728 P.2d at 263. The court noted that damages should only be used where Uniform Fraudulent Conveyance Act remedies are inadequate.[7] *Id.* The court held:

the common law action for damages against a conspirator in a fraudulent conveyance is the value of the property fraudulently transferred or the amount of the debt, whichever is less. Our formulation of damages is similar to the result reached by the courts exercising their powers in equity to award money damages against a fraudulent transferee.

*Id.* at 264.

■■■ We agree with the *McElhanon* rule. If the fraudulent conveyance remedy, i.e., voiding the transfer as to the creditor, is adequate, the plaintiff is not entitled to damages. If voiding the transfer is inadequate, however, the plaintiff is entitled to damages equalling the lesser of the value of the property fraudulently transferred or the amount of the debt. The value of the fraudulently transferred property should be determined as of the time of the fraudulent transfer or when the creditor reduces the debt to judgment, whichever occurs later.

■■■ Because the underlying debt sounds in contract, not in tort, exemplary damages and damages for emotional distress are not authorized. Interest and attorney fees are allowable to the extent authorized under Alaska Civil Rules 78(e) and 82. Additional awards for interest and attorney fees are not allowable, as they would constitute double-dipping.

## C. Consequences of Stipulation to Entry of Judgment on the Fraudulent Conveyance Counts

■■■ Summers argues that, even if a cause of action exists for participating in a fraudulent conveyance scheme, the court erred in holding him liable on this count.

---

6. In *McElhanon*, the court recognized the cause of action for judgment creditors, applying the Uniform Fraudulent Conveyance Act. *McElhanon*, 728 P.2d at 263, 266. We recognize the cause of action for those who are general creditors at the time of the fraudulent conveyance as well. General creditors, however, must reduce their claims to judgment before asserting this cause of action. Prior to judgment, general creditors have no legal right to the property fraudulently conveyed.

7. The remedies under the Uniform Fraudulent Conveyance Act are:
    (1) The creditor may have the conveyance set aside, or
    (2) The creditor may disregard the conveyance and execute on or garnish the property in the hands of the fraudulent transferee.
    *McElhanon*, 728 P.2d at 263.

According to Summers, the superior court improperly treated his consent to entry of judgment for Hagen on the fraudulent conveyance counts as a stipulation to the factual allegations therein.[8] We agree with Summers, and reverse.

In his pretrial memorandum, Summers concluded that it is more likely than not that the Court would find the conveyances of [the four parcels] to him were in violation of AS 34.40.010 et seq. and thus that Briske would not prevail on these issues in either this case (and the companion adversary proceeding) or the adversary proceeding with Briske's unsecured creditors....

This is not an admission of wrongdoing on Summers' part. Among other things, he gave valuable consideration for these parcels.

Summers originally did not wish to consent to entry of judgment on the fraudulent conveyance counts. Rather, he wanted to moot the counts by reconveying the properties in question back to their original grantors (Briske, Briske and Mrs. Briske, or the Peanut Farm).

Hagen moved to enjoin Summers from reconveying the properties to the original grantors. He hoped to keep the properties out of the Briskes' bankruptcy estates. As a compromise, Summers consented to entry of judgment on the fraudulent conveyance counts.

Given these circumstances, we hold that Summers consented only to the entry of judgment for Hagen on the fraudulent conveyance counts, not to the factual allegations therein. The superior court's subsequent reliance on the allegations in granting partial summary judgment in favor of Hagen on the issue of liability on the conspiracy count was error. *See Shlakman v. Board of Higher Educ.*, 5 Misc.2d 901, 161 N.Y.S.2d 529, 534 (N.Y.Sup.Ct.1957) ("Consent to entry of judgment implies that the terms and conditions have been agreed on and consent thereto given in open court or by stipulation, and the court has no power

to supply terms, provisions, or essential details not previously agreed to by the parties." (quoting 49 C.J.S. *Judgments* § 173)).

D. Attorney Fees

Hagen argues the superior court's attorney fee award of $9,817.87 was too low because the superior court did not consider the four fraudulent conveyance counts in its calculation. Because we reverse on other grounds, we need not address this issue.

REVERSED and REMANDED. The attorney fee award is VACATED.

---

**8.** Different judges presided over the pretrial conference (Judge Steinkruger) and the partial

grant of summary judgment (Judge Savell).