KLEINFELD, Circuit Judge,
concurring in part and dissenting in part:
I concur in all of the well considered majority opinion except for part C(l), inclusion of the children’s trust money in the loss calculation.
The government’s evidence showed that Lawrence looted his children’s trust. That is a bad thing to do, and it may have been criminal. But even if he stole his children’s money, that did not make what was left of it his creditors’ money. Yet treating the children’s trust as a concealed asset, including it as part of the loss, and requiring restitution to creditors for it, has that effect. Possibly Lawrence’s sentence should have been increased on account of his wrong to his children in using their money as his own. That wrong may be relevant conduct for purposes of sentencing. But it was not increased on that theory. It was increased on the theory that what was in the children’s trust was actually Lawrence’s money, and that he hid this money from his creditors by not listing it. That theory was not supported by the record. The children’s trust should not have been counted as among the assets concealed from Lawrence’s creditors.
Lawrence was, in my view, entitled to judgment of acquittal on the charges of concealment of assets under 18 U.S.C. § 152, insofar as this related to his trust for his children. The jury did not convict him on this charge, but the conduct charged was used as a basis for sentence enhancement. In order to commit the crime, a person must fraudulently conceal “property belonging to the estate of the debtor.” Lawrence appears from the rec *849 ord to have looted the children’s trust. He was freely borrowing from it and having bills paid by it as though the assets belonged to him. But however wrongful his (and perhaps the trustees’) conduct may have been, the wrong was against the children, not against Lawrence’s creditors. Taking some of the children’s money to pay some creditors did not make the rest of the money Lawrence’s, subject to the claims of his other creditors.
The record shows a valid trust. Lawrence established it in 1979, apparently as part of a divorce arrangement and prior to his financial difficulties during the mid-80’s real estate collapse. He made a friend and his ex-wife the trustees, and conveyed substantial amounts to the trustees irrevocably, for the benefit of his children. The children were to get the money after reaching majority. The trustees were expressly prohibited in the trust instrument from exercising their powers for the benefit of Lawrence rather than his children. Thus the trustees had legal title, the children the beneficial interest. Lawrence retained no interest whatsoever. The trust assets were simply not “property belonging to the debtor.”
That Lawrence used the children’s money as his own, and that the trustees let him get away with it, did not make it his own. It is as though a crooked bank employee used some depositor’s account as though it were his own; were the crooked bank employee to file for bankruptcy, he could not list the remaining funds in the depositor’s account as his asset, and his creditors would not be entitled to what was left in the depositor’s account. A thief does not get title to what he steals from his victim, nor to what his victim has left. In this case, treatment of the remaining money in the children’s trust as Lawrence’s assets is analogous to treating the thief as having title to what his victim has left after the theft. The money belongs to Lawrence’s children, not his creditors.
The majority suggests that the conveyance to the trust was void under state law. I agree that state law controls, so that if state law nullifies the conveyance to the trust, then counting the trust assets as Lawrence’s would be correct. But the majority’s reading of state law is mistaken.
The majority’s statutory citation, Alaska Stat. §§ 34.40.110, 34.40.010, is to the Alaska Fraudulent Conveyance Act. This statute is a codification of the law of fraudulent conveyances. Since the Statute of Fraudulent Conveyances in 1571 criminalized conveyances made with the purpose and intent “to delay hinder or defraud” creditors or purchasers, creditors have been protected against such conveyances. The law of fraudulent conveyances enables a creditor to execute against assets that the debtor has fraudulently conveyed to another, as though the conveyance had not occurred. It protects creditors against conveyances intended to cheat them (not other people) out of their money. But there is no basis in the record for us to say that Lawrence’s 1979 conveyance was intended to defraud, hinder or delay his creditors in his 1991 bankruptcy, which took place twelve years later. The indictment says his criminal scheme started in 1987, eight years after the conveyance into the trust for his children. The trust for his children has all the earmarks of his divorcing wife locking up some of Lawrence’s money for his children while he was rich, and few or none of the usual badges of fraud.
The district court did not make any finding of fact that Lawrence’s conveyance to the trust was a fraudulent conveyance. It did not find that Lawrence was insolvent when he conveyed the assets into the trust, that Lawrence retained possession of the assets conveyed into the trust, or that the conveyance into the trust was otherwise tainted by any of the traditional badges of fraud.
Blumenstein v. Phillips Ins. Center, *850 Inc.,[1] Alaska’s leading case on fraudulent conveyances, establishes that the intent element for fraudulent conveyances in Alaska demands actual rather than constructive intent when the conveyance is made. The existence of fraudulent intent in conveying the property to defraud creditors is a question of fact, and even where delivery and possession is never transferred (the record in this case seems to indicate that the trust assets were delivered to the trustees), so that a statutory presumption of fraud operates, the presumption is re-buttable by evidence showing that the conveyance, when made, was in good faith.[2]
Summers v. Hagen[3] establishes that to take the property from Lawrence’s children’s trust, his creditors would have to establish a “fraudulent scheme” under the Alaska Fraudulent Conveyances Act. That would require proof of (1) “An unlawful agreement,” (2) “The specific intent of each participant in the scheme to hinder, delay and defraud a creditor of one who participated in the scheme,” (3) “Acts committed pursuant to the unlawful agreement,” and (4) “Damages caused by the acts committed pursuant to the unlawful agreement.”[4] First National Bank v. Enzler[5] upholds a finding that a conveyance was not fraudulent, even though the debtor conveyed substantially all his assets to his wife and left himself insolvent, because some of the other “badges of fraud” (enumerated in the opinion were absent, and a court could conclude that the debtor did not intend the conveyance to defraud the creditor who sued to set it aside.)
Lawrence’s invasion of his children’s trust may have been fraudulent as to the children. But that does not make the conveyance into the trust, in 1979, long before Lawrence’s financial troubles and his fraudulent scheme started, a “fraudulent conveyance.” There was no finding of fact by the district court that the 1979 conveyance into the trust was a fraudulent conveyance. It is plausible that the conveyance might have been intended to hide or shield assets from present or future creditors. It is perhaps more plausible that Lawrence established the trust when he was making plenty of money, with no intent to defraud his creditors (so no fraudulent conveyance), in order to shift income to his children who were presumably in a lower tax bracket, and in order to assure the children’s mother that the children would be protected from whatever future financial events might affect Lawrence. Lawrence’s abuse of the trust (not that it bears on whether the conveyance to the trust was fraudulent) may well have been, not an attempt to defraud his creditors, but rather a fraud on his children to misappropriate his children’s money to pay some of his creditors.
There are no findings of fact that Lawrence made a fraudulent conveyance into the trust. Nothing in the record justifies us in finding as a matter of fact, on appeal, that he did. By its dependence on the Alaska Fraudulent Conveyances Act to count the children’s trust money as part of Lawrence’s assets, the majority implicitly concedes that unless the conveyance to the trust was void, the assets could not be counted. The majority apparently concludes that if the grantor loots an irrevocable trust, then its assets are his assets because of the fraudulent conveyance act. That is mistaken. The trustee has legal title, the beneficiaries equitable title, and the grantor no title. Were there a fraudulent conveyance, the grantor’s creditors could take from the beneficiaries the assets of a trust that the grantor had partially looted. The doctrine of fraudulent con *851 veyances has never, to my knowledge, been used that way. Were that the law, an ERISA plan of a failed business might be claimed by the businesses’ creditors instead of being reserved for the employees, if the business looted the plan as it tried to stave off failure. What is left of the trust is the children’s money, and they would not lose title to Lawrence’s creditors even if Lawrence connived with the trustees to funnel it out. Without a finding of fact that the conveyance to the trust in 1979 was fraudulent, the money in the trust simply was not Lawrence’s, so he could not properly be punished for failing to list it as his own on his bankruptcy papers.

. Blumenstein v. Phillips Insurance Center, Inc., 490 P.2d 1213 (Alaska 1971).

. Id. at 1218-19.

. Summers v. Hagen, 852 P.2d 1165 (Alaska 1993).

. Id. at 1169-70.

. First National Bank v. Enzler, 537 P.2d 517 (Alaska 1975).