*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MERDES & MERDES, P.C., MERDES LAW OFFICE, P.C., and WARD MERDES, | ) ) ) | Supreme Court No. S-16048 |
| | ) | Superior Court No. 3AN-13-07180 CI |
| Appellants, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | No. 7212 – November 9, 2017 |
| LEISNOI, INC., | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Brad S. Kane, Kane Law Office, Los Angeles, California, for Appellants. Katherine Demarest, Dorsey & Whitney LLP, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Maassen, Bolger, and Carney, Justices. [Winfree, Justice, not participating.]

MAASSEN, Justice.

## I. INTRODUCTION

An attorney represented a Native corporation in litigation nearly three decades ago. The corporation disputed the attorney's claim for fees, and in 1995, after the attorney's death, the superior court entered judgment on an arbitration award of nearly $800,000 to the attorney's law firm, then represented by the attorney's son. The

corporation paid eight installments on the judgment but eventually stopped paying, citing financial difficulties. The law firm sought a writ of execution for the unpaid balance, and the writ was granted. The corporation appealed but under threat of the writ paid $643,760 while the appeal was pending. In a 2013 opinion we held the writ invalid and required the firm to repay the $643,760.

The corporation was never repaid. The original law firm moved its assets to a new firm and sought a stay of execution, averring that the original firm now lacked the funds necessary for repayment. The corporation sued the original firm, the successor firm, and the son for breach of contract, fraudulent conveyance, conspiracy to fraudulently convey assets, violations of the Unfair Trade Practices Act (UTPA), unjust enrichment, and punitive damages. The firm counterclaimed, seeking recovery in quantum meruit for attorney's fees it claimed were still owing for its original representation of the corporation.

The superior court granted summary judgment for the corporation on the law firm's quantum meruit claim and, following trial, found that the son and both law firms fraudulently conveyed assets and were liable for treble damages under the UTPA.

The son and the law firms appeal. They argue that the superior court erred in these ways: (1) holding that the quantum meruit claim was barred by res judicata; (2) holding the defendants liable for fraudulent conveyance; (3) awarding damages under the UTPA; and (4) making mistakes in the form of judgment and award of costs. But seeing no error or abuse of discretion in the superior court's decision of most of these issues, we affirm its judgment, with one exception. We remand for reconsideration of whether all three defendants are liable for prejudgment interest from the same date.

## II.    FACTS AND PROCEEDINGS

The current dispute arose between Leisnoi, Inc., an Alaska Native corporation, and a law firm, Merdes & Merdes. The history of this case is outlined in our 2013 opinion;[1] we summarize it again here.

### A.    Before 2013

Beginning in 1988 Ed Merdes and Merdes & Merdes, his law firm, represented Leisnoi in litigation against Omar Stratman over Leisnoi's title to certain lands on Kodiak Island.[2] Ed Merdes's representation was based on a contingency fee agreement entitling him to "an undivided thirty percent . . . interest in all lands and/or settlement" that Leisnoi obtained or retained as a result of the Stratman litigation.[3]

Ed Merdes died in 1991, but Merdes & Merdes continued its representation of Leisnoi through 1992, when litigation in the superior court ended in Leisnoi's favor (though appeals continued until 2008).[4] Following the favorable judgment, Merdes & Merdes — represented by Ed's son Ward Merdes, also an attorney — sought to enforce the fee agreement, and Leisnoi requested arbitration through the Alaska Bar Association.[5] An arbitration panel awarded Merdes & Merdes a monetary sum roughly equal to 30% of the value of the land — "$721,000 in attorney's fees, plus interest, payable in $100,000 yearly installments" — as well as the $55,000 in attorney's fees the

---

[1]    *Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879, 881-84 (Alaska 2013).

[2]    *Id.* at 882.

[3]    *Id.* (alteration in original).

[4]    *Id.* at 882-83 & n.4.

[5]    *Id.*

superior court had earlier awarded Leisnoi as the prevailing party.[6] The superior court affirmed the arbitration award and entered judgment on it in 1995, and it was not appealed.[7]

Leisnoi made six annual $100,000 payments to Merdes & Merdes and two $50,000 payments.[8] But it failed to make its September 2002 payment, citing the cost of the ongoing Stratman litigation.[9]

Over the next few years Merdes & Merdes and Leisnoi attempted to negotiate a settlement of the unpaid balance.[10] Leisnoi "generally did not dispute the validity of the judgment awarded to [Merdes & Merdes] and actively proposed settlement arrangements."[11] Ward Merdes later explained that he delayed executing on the 1995 judgment because of the negotiations and Leisnoi's tenuous financial position.[12] But after the last appeal in the Stratman litigation was resolved favorably to Leisnoi, Merdes & Merdes sought a writ of execution in January 2009, and the superior court granted it

---

[6]   *Id.* at 883.

[7]   *Id.*

[8]   *Id.*

[9]   *Id.*

[10]   *Id.* at 883.

[11]   *Id.* at 884.

[12]   *Id.*

a year later.[13] Leisnoi appealed from the grant of the writ but paid the amount still owing
— $643,760 — while the appeal was pending.[14]

## B.    Our 2013 Opinion

In 2013 we reversed the superior court's grant of the writ of execution. We held that "Leisnoi's contingency fee agreement with Merdes violated [the Alaska Native Claims Settlement Act's] prohibition against contingency fee agreements, as did the Arbitration Panel's fee award, the superior court's 1995 entry of judgment, and the 2010 writ of execution."[15] Leisnoi was therefore "entitled to recover the balance that it paid after the writ of execution was unlawfully issued."[16] Leisnoi was not, however, entitled to relief from the 1995 judgment under Alaska Civil Rule 60(b), because the judgment was voidable rather than void and Leisnoi waited too long to seek relief from it.[17] Thus, although Leisnoi could recover the $643,760 it paid as a result of the timely-appealed writ of execution, it could not recover the $800,000 it paid before 2010 based on the 1995 final judgment.[18]

Though holding the contingency fee agreement invalid, we left the door open for Merdes & Merdes to seek "any fees it believes are owed under a theory of

---

[13]    *Id.*

[14]    *Id.*

[15]    *Id.* at 894.

[16]    *Id.*

[17]    *Id.*

[18]    *Id.*

quantum meruit."[19] In an order on rehearing we "express[ed] no opinion whether Merdes is entitled to the remedy of quantum meruit" or about the merits of Leisnoi's potential defenses to such a remedy because "[t]hese and related issues are matters for the superior court to address."[20]

### C.    Following Our 2013 Decision

What happened next, according to Leisnoi, is that "Ward Merdes transferred [Merdes & Merdes's] assets to himself and to the newly formed Merdes Law Office, P.C." in order to avoid returning the $643,760 Leisnoi had paid under threat of the invalid writ of execution.  In March 2013 Merdes & Merdes sought a stay of execution on our 2013 opinion until its "competing claim" for quantum meruit could be resolved; Ward Merdes attested by affidavit that Merdes & Merdes "does not have anywhere near enough money to return $643,760 to Leisnoi pursuant to Supreme Court Order 6747.  It doesn't have 1/5th of that amount."

In May 2013 Leisnoi sued Merdes & Merdes, Merdes Law Office, and Ward Merdes for breach of contract, fraudulent conveyance, conspiracy to fraudulently convey assets, violations of the UTPA, and unjust enrichment.  Merdes[21] denied Leisnoi's allegations, and Merdes & Merdes filed a counterclaim for its attorney's fees framed as a claim for quantum meruit.  The superior court granted Leisnoi's motion for summary judgment on the counterclaim, concluding that recovery in quantum meruit was barred by res judicata and the statute of limitations.  The court also granted summary

---

[19]    *Id.*

[20]    *Id.*

[21]    Hereafter, because of their common claims, defenses, and representation, we generally refer to the three defendants in this suit — Merdes & Merdes, Merdes Law Office, and Ward Merdes — collectively as "Merdes," identifying individual defendants where the context requires it.

judgment for Leisnoi on its first cause of action for breach of contract, ordering Merdes & Merdes to repay Leisnoi $643,760 plus interest to comply with the mandate of our 2013 opinion.

The court held a five-day bench trial on the remaining claims. It granted a directed verdict against Leisnoi on the conspiracy claim, citing case law that requires "[g]eneral creditors" to "reduce their claims to judgment before asserting this cause of action."[22] But it found that Merdes & Merdes fraudulently conveyed assets to Merdes Law Office and Ward Merdes. Merdes had defended against that claim by contending that Merdes Law Office was created not to avoid paying Leisnoi but rather because of Ward Merdes's agreement with his nephew that they would create a new law firm together upon the nephew's graduation from law school. But as the superior court saw it, the real issue was not the creation of Merdes Law Office but the use of Merdes & Merdes's assets to capitalize it. According to the superior court, "[T]he only reason Leisnoi was the only creditor of [Merdes & Merdes] left unpaid [after the transfers from Merdes & Merdes to Merdes Law Office] was because that was the explicit goal of Ward Merdes." Because Merdes Law Office "could have happily existed waiting for [the nephew] to pass the Alaska Bar Exam and did not require capitalization" at the time, the court found that Merdes Law Office "was capitalized not so it could conduct business, but to attempt to remove the assets with which [Merdes & Merdes] would pay its debt to Leisnoi."

This transfer of assets, the court concluded, was "simply not defensible." The court considered eight "badges of fraud" and found that seven of them "weigh[ed] strongly in favor of finding that the capitalization of [Merdes Law Office] with the assets of [Merdes & Merdes] was done with the intent to defraud Leisnoi and prevent the

---

[22]     *Summers v. Hagen*, 852 P.2d 1165, 1170 n.6 (Alaska 1993).

payment of the debt owed to Leisnoi." The court found that the fraudulent conveyance was also by definition a deceptive and unfair act for purposes of the UTPA, and that all three defendants — Merdes & Merdes, Merdes Law Office, and Ward Merdes — violated the UTPA by participating in the asset transfer. The court therefore voided the transfers to Merdes Law Office and Ward Merdes and found Merdes & Merdes, Merdes Law Office, and Ward Merdes jointly and severally liable for Leisnoi's compensatory damages. Pursuant to the UTPA the court trebled this amount to $1,931,280.[23]

Merdes filed this appeal.

## III. STANDARDS OF REVIEW

"We review the superior court's grant of summary judgment de novo and draw 'all factual inferences in favor of' and view 'the facts in the light most favorable to the non-prevailing party.' "[24] We will "affirm a grant of summary judgment 'when there are no genuine issues of material fact, and the prevailing party . . . [is] entitled to judgment as a matter of law.' "[25]

"Application of the doctrine of res judicata presents questions of law which we review de novo."[26] "Interpretation of the UTPA presents a question of law,"[27] as

---

[23] *See* AS 45.50.531(a) (allowing damages for unlawful trade practices of "three times the actual damages or $500, whichever is greater").

[24] *Peterson v. State, Dep't of Nat. Res.*, 236 P.3d 355, 361 (Alaska 2010) (quoting *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005)).

[25] *Id.* (alterations in original) (quoting *Rockstad*, 113 P.3d at 1219).

[26] *Kent V. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 233 P.3d 597, 600 (Alaska 2010) (citing *Alderman v. Iditarod Props., Inc.*, 104 P.3d 136, 140 (Alaska 2004)).

[27] *Kenai Chrysler Ctr., Inc. v. Denison*, 167 P.3d 1240, 1255 n.37 (Alaska (continued...)

does "[t]he time when prejudgment interest begins to accrue."[28] "Whether an entire type of damages is allowed"[29] and "whether the trial court's award of damages is based on an erroneous application of law" are also questions of law.[30] "We review such questions of law de novo, 'adopt[ing] the rule of law that is most persuasive in light of precedent, reason, and policy.' "[31]

## IV. DISCUSSION

Merdes focuses its appeal on essentially four areas of alleged error: (1) summary judgment against Merdes & Merdes on its quantum meruit claim; (2) the finding of liability and award of damages for fraudulent conveyance; (3) the award of damages for violation of the UTPA; and (4) the award of prejudgment interest.

### A. The Superior Court Did Not Err By Granting Summary Judgment On Merdes & Merdes's Quantum Meruit Claim.

Merdes first argues that the superior court erred when it granted summary judgment on the quantum meruit claim on res judicata and statute of limitations grounds. We address res judicata first and find it dispositive.

---

[27](...continued) 2007) (citing *J.M.R. v. S.T.R.*, 15 P.3d 253, 256 (Alaska 2001)).

[28] *Johnson v. Olympic Liquidating Tr.*, 953 P.2d 494, 497 (Alaska 1998) (citing *Tookalook Sales & Serv. v. McGahan*, 846 P.2d 127, 129 (Alaska 1993)).

[29] *Madonna v. Tamarack Air, Ltd.*, 298 P.3d 875, 878 (Alaska 2013) (citing *Alaska Constr. Equip., Inc. v. Star Trucking, Inc.*, 128 P.3d 164, 167 (Alaska 2006)).

[30] *Burton v. Fountainhead Dev., Inc.*, 393 P.3d 387, 393 (Alaska 2017) (quoting *Beaux v. Jacob*, 30 P.3d 90, 97 (Alaska 2001)).

[31] *Weimer v. Cont'l Car & Truck, LLC*, 237 P.3d 610, 613 (Alaska 2010) (alteration in original) (quoting *City of Fairbanks v. Amoco Chem. Co.*, 952 P.2d 1173, 1176 (Alaska 1998)).

"The doctrine of res judicata as adopted in Alaska provides that a final judgment in a prior action bars a subsequent action if the prior judgment was (1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same cause of action."[32] "[R]es judicata bars not only relitigation of the same cause of action, but also new claims arising from the same transactions as those in the first suit."[33] In this case the superior court held that because Merdes & Merdes litigated its right to attorney's fees to a valid final judgment in 1995, it was not entitled to bring another suit later seeking the same relief under a different theory. Merdes argues that res judicata does not apply to this case, and if it does we should apply one of several possible exceptions to the doctrine.

### 1. A voidable judgment has res judicata effect.

Merdes first contends that the "final judgment on the merits" element of the res judicata doctrine is not met; it argues that our 2013 decision made the 1995 judgment unenforceable and thus invalid for purposes of any preclusive effect on its later quantum meruit claim. We agree that res judicata would not apply if the 1995 judgment were void.[34] But we held in our 2013 decision that the judgment, though erroneous, "was

---

[32] *Pister v. State, Dep't of Revenue*, 354 P.3d 357, 362 (Alaska 2015) (quoting *Plumber v. Univ. of Alaska Anchorage*, 936 P.2d 163, 166 (Alaska 1997)).

[33] *Id.* (alteration in original) (quoting *Plumber*, 936 P.2d at 166); *DeNardo v. State*, 740 P.2d 453, 456 (Alaska 1987).

[34] 50 C.J.S. *Judgments* § 950 (2017) ("A void judgment neither binds nor bars any one. Thus, a judgment does not merge the cause of action, and constitutes no bar to further litigation on the same cause of action, where the judgment is void." (footnotes omitted)); *see also DeNardo*, 740 P.2d at 457 (defining void judgment).

voidable rather than void."[35]  A voidable judgment is "legally effective until set aside."[36] It can be appealed directly but is not subject to collateral attack.[37]

Merdes argues, however, that a judgment is only "valid" for res judicata purposes if it is enforceable and "the rights of the parties [are] ascertainable from [its] face."  It is true that the 1995 judgment is no longer enforceable following our 2013 decision.  But the purpose of the res judicata doctrine requires us to focus on the finality of the judgment at the time it was entered and went unappealed.  Res judicata is intended to protect the finality of judgments; its aim is "to prevent parties from again and again attempting to reopen a matter that has been resolved by a court of competent

---

[35]    *Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879, 882 (Alaska 2013); *see id.* at 892 ("[A]n erroneous judgment is not tantamount to a void judgment; the superior court's entry of judgment, while erroneous, did not render the judgment void or divest the court of jurisdiction.").

[36]    RESTATEMENT (SECOND) OF JUDGMENTS ch. 5, intro. note (AM. LAW INST. 1982) (explaining that the distinction between "void" and "voidable" is essentially "between a judgment that is a nullity ab initio and one that is legally effective until set aside").

[37]    *Comm'r, Alaska Dep't of Health & Soc. Servs. v. Anthony*, 709 P.2d 491, 492 (Alaska 1985) ("[This] erroneous procedural ruling . . . was merely voidable, not void.  Therefore, the state's recourse is to bring a direct challenge to the ruling.  The state may not here collaterally attack an order entered in the [preceding class action]." (emphasis omitted)); *State ex rel. Casselman v. Macken*, 235 N.W.2d 867, 869 (Neb. 1975) ("Where the court has jurisdiction of the parties and the subject matter, its judgment is not subject to collateral attack because the judgment is only voidable and not void."); *Berry v. Berry*, 786 S.W.2d 672, 673 (Tex. 1990) ("Because the final judgment is voidable as opposed to void, the rule of res judicata would apply."); 47 AM. JUR. 2D *Judgments* § 711 (2017) ("[G]enerally, in order to collaterally attack a trial court's judgment, it must be shown that the judgment is void rather than merely defective or voidable.").

jurisdiction."[38]  What matters here is that there was a "final judgment on the merits" in a case in which Merdes had the opportunity to bring a quantum meruit claim but failed to do so.[39]

Merdes agrees that "a quantum meruit theory [was] originally addressed in the 1994 Arbitration" — though raised by Leisnoi, not Merdes & Merdes.  As Merdes describes the proceedings, Leisnoi "sought to reduce [Merdes & Merdes's] fee to an hourly quantum meruit recovery . . . while [Merdes & Merdes] sought to enforce the contingent fee contract," and the arbitration award enforced the contract over the quantum meruit alternative.  Merdes & Merdes presumably chose not to pursue quantum meruit in the original action only because it believed the contract claim to be the more advantageous option.

Because the 1995 judgment in a case that encompassed quantum meruit relief was voidable, not void, it operated to bar Merdes & Merdes's later resurrection of a quantum meruit claim.  The superior court correctly applied the doctrine of res judicata.

---

[38]     *Alaska Pub. Interest Research Grp. v. State*, 167 P.3d 27, 44 (Alaska 2007) (quoting *State, Child Support Enf't Div. v. Bromley*, 987 P.2d 183, 192 (Alaska 1999)).

[39]     *Patterson v. Infinity Ins. Co.*, 303 P.3d 493, 497 (Alaska 2013) ("[A] fundamental tenet of the res judicata doctrine is that it precludes relitigation between the same parties not only of claims that were raised in the initial proceeding, but also of those relevant claims that could have been raised then." (alteration in original) (quoting *Calhoun v. Greening*, 636 P.2d 69, 72 (Alaska 1981))).

**2.**     **The superior court did not refuse to follow *Estate of Katchatag*.**

Merdes argues that the superior court "[r]efused to [f]ollow" our holding in *Estate of Katchatag v. Donohue*[40] by failing "to recognize: (i) the distinction between contingent fee agreements and other contracts; and (ii) an attorney's right to seek quantum meruit after notice the contract is unenforceable." In *Estate of Katchatag* an attorney sought to recover fees in probate court based on an alleged fee-sharing agreement with another attorney in a wrongful death case.[41] The probate court found there was no written agreement but gave the attorney 20 days in which to file and support a quantum meruit claim, which the attorney failed to do.[42] The probate court then approved the award of attorney's fees out of the estate; it was only afterwards, on a motion for reconsideration, that the attorney filed an affidavit describing the terms of an alleged oral fee-sharing agreement.[43] The probate court ruled that the attorney had waived his right to make such a claim.[44] Affirming the judgment, we observed in a footnote that the attorney "was not necessarily foreclosed from claiming damages he may have incurred in reliance on the [fee-sharing] contract he claims to have made," but because he "waived an opportunity to seek a quantum meruit recovery in the probate

---

[40]     907 P.2d 458 (Alaska 1995).

[41]     *Id.* at 459-60.

[42]     *Id.* at 461.

[43]     *Id.*

[44]     *Id.*

court," res judicata "consequently would bar any later attempt to recover the value of services performed in that case."[45]

The superior court's decision in this case is not contrary to *Estate of Katchatag*. Our footnoted dicta left open the *possibility* of a quantum meruit claim without guaranteeing its success, just as we did in our 2013 *Leisnoi* opinion.[46] In neither case was the superior court foreclosed from considering relevant defenses. And our comments in *Estate of Katchatag* precluded a quantum meruit claim for any fees the probate court had already addressed—including those the attorney waived by not timely asserting the claim when invited to do so.[47] Like the attorney in *Estate of Katchatag*, Merdes & Merdes declined to seek quantum meruit in the original litigation, even though it was available as an alternative theory.[48] Like the attorney in *Estate of Katchatag*,

---

[45] *Id.* at 465 n.18 (citing *N. Star Terminal & Stevedore Co. v. State*, 857 P.2d 335, 337 (Alaska 1993)).

[46] Denying Leisnoi's petition for rehearing on the 2013 opinion, we explained that "Merdes may seek recovery in quantum meruit, but Leisnoi is also free to raise its argument in the superior court that the remedy of quantum meruit is unavailable in light of the doctrine of res judicata and the statute of limitations." *Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879, 894 (Alaska 2013).

[47] *Estate of Katchatag*, 907 P.2d at 465 n.18.

[48] *See, e.g.*, *Vantage Enters., Inc. v. Caldwell*, 244 N.W.2d 678, 680 (Neb. 1976) ("[W]e have frequently held that an action on an express contract may be joined with an action for quantum meruit where the facts arise out of the same transaction . . . ."); *Dean v. Exotic Veneers, Inc.*, 531 P.2d 266, 269 (Or. 1975) ("Nothing prevented him from presenting his claim against the receiver on the alternative theories of express contract and quantum meruit and from having them both adjudicated at the same time.").

Merdes & Merdes was barred from asserting the theory in a later case in order to recover fees that were at issue in the earlier one.[49]

### 3. Merdes & Merdes does not qualify for an exception to res judicata.

Merdes asks us to apply an exception to res judicata if we would otherwise hold that the doctrine applies. Merdes argues for the application of exceptions regarding (1) limitations on theories of the case, (2) inconsistency, (3) promoting a coherent disposition, and (4) public policy. We conclude that none of these exceptions apply.

First, according to the Restatement (Second) of Judgments, res judicata should not bar a claim that relies on a theory the plaintiff was unable to pursue in the earlier action "because of the limitations on the subject matter jurisdiction of the courts [in that earlier action] or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action."[50] But in this case there were no formal barriers to the arbitration panel's or the superior court's exercise

---

[49] *Estate of Katchatag*, 907 P.2d at 465 n.18; *see also Vantage Enters.*, 244 N.W.2d at 680 (reasoning that although plaintiff had information to bring a quantum meruit claim in the initial action, "[i]t chose not to do so, but elected to take a chance on a favorable verdict, reserving to itself another 'bite of the apple' in the event it failed in the first suit . . . , and as a matter of public policy, it should not be permitted to do this"); *Exotic Veneers*, 531 P.2d at 269 ("Having once litigated his [contract] claim against defendant, he should be foreclosed from further litigation on all grounds or theories of recovery which could have been litigated in the first instance. The public policy to be served by the doctrine of res judicata prevents him from having two bites at the apple."); RESTATEMENT (FIRST) OF JUDGMENTS § 65 cmt. d (AM. LAW INST. 1942) ("Where the plaintiff brings an action seeking one of these remedies and judgment is given for the defendant on the merits, the plaintiff is precluded from subsequently maintaining an action in which he seeks the other remedy.").

[50] RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(c) (AM. LAW INST. 1982).

of jurisdiction over a quantum meruit claim, as contemplated by this exception;[51] the arbitration panel did, in fact, consider and reject the claim. This jurisdictional exception to the res judicata doctrine therefore does not apply.

Second, Merdes relies on an exception that applies when "[t]he judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme."[52] Merdes points to Alaska Bar Rules 34 through 42 as creating a scheme that "appl[ies] with the force of law" and that allows a lawyer to seek quantum meruit recovery if a fee agreement is unenforceable. But here "[t]he judgment in the first action" — the 1995 judgment on the fee contract — was not "plainly inconsistent" with these rules. And there is nothing in the Bar Rules that prevents a court from applying the usual principles of claim and issue preclusion to attorneys' actions to recover on fee agreements.

Third, Merdes relies on an exception where "[i]t is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason, such as . . . the failure of the prior litigation to yield a coherent disposition of the controversy."[53] Merdes argues that now that it must return the $643,760, "[t]he only way to make a coherent disposition is to allow [Merdes & Merdes] to seek the balance owed under quantum meruit." But we disagree. As Leisnoi points out, the comment to Restatement (Second) of Judgments § 26(1)(f) limits this exception's applicability to "a small category of cases in which the policies supporting

---

[51]     *Id.* § 26 cmt. c ("The formal barriers referred to may stem from limitations on the competency of the system of courts in which the first action was instituted, or from the persistence in the system of courts of older modes of procedure . . . .").

[52]     *Id.* § 26(1)(d).

[53]     *Id.* § 26(1)(f).

merger or bar may be overcome" and clarifies that the exception "is not lightly to be found."[54] The Restatement's examples of cases in which the exception might apply include those concerning the "validity of a continuing restraint or condition having a vital relation to personal liberty," "civil commitment of the mentally ill," "the custody of a child," and divorce.[55] In these circumstances there is "need for greater flexibility and . . . for special legislative treatment."[56] An attorney's fee dispute does not present such a case.

Finally, Merdes argues that as a matter of public policy, "simple justice requires that the doctrine of res judicata be tempered to allow [Merdes & Merdes] an opportunity to prove its quantum meruit claim and vindicate Ward Merdes's belief in that claim." Given the circumstances of this case — in which both parties are burdened in different ways by the voidable 1995 judgment — we do not see that public policy favors a particular result. Leisnoi paid approximately $800,000 to Merdes & Merdes despite the invalidity of the fee agreement and was time-barred from later recovering that amount under Civil Rule 60(b); on the other hand, Merdes & Merdes recovered approximately $800,000 but could recover no more.[57] Merdes now values the quantum meruit claim as between $875,000 and $1.7 million. Its recovery of approximately

---

[54]     *Id.* § 26 cmt. i.

[55]     *Id.*

[56]     *Id.*

[57]     Our 2013 opinion described payments totaling $700,000. *Leisnoi, Inc. v. Merdes & Merdes, P.C.*, 307 P.3d 879, 884 (Alaska 2013). In their briefs on this appeal, however, both parties describe the amount paid as "roughly $800,000" or simply "$800,000." We do not resolve the discrepancy but accept the number on which the parties appear to agree.

$800,000 on this claim satisfies us that there is no serious unfairness in this case resulting from application of the res judicata doctrine.

Because none of the exceptions apply, we affirm the superior court's decision on summary judgment that the quantum meruit claim was barred by res judicata. We need not address the statute of limitations, the alternative basis for the court's decision.

**B.     The Superior Court Did Not Err In Its Rulings On Leisnoi's Fraudulent Conveyance Claim.**

The superior court found after trial that Merdes was liable on Leisnoi's claim for fraudulent conveyance, a finding Merdes attacks on several grounds. First, Merdes argues that a claim for fraudulent conveyance presupposes that the plaintiff has a judgment covering the thing fraudulently conveyed, and Leisnoi lacked a judgment requiring Merdes to repay the $643,760. Second, Merdes argues that damages for fraudulent conveyance depend on proof that simply voiding the conveyance is not an adequate remedy, and that the superior court therefore erred by awarding damages for fraudulent conveyance.

Alaska Statute 34.40.010 declares void any conveyance made with an "intent to hinder, delay, or defraud creditors" from recovering a debt.[58] "The intent to

---

[58]     *See Nerox Power Sys., Inc. v. M-B Contracting Co.*, 54 P.3d 791, 796 (Alaska 2002) ("The prohibition against fraudulent conveyances has been codified in Alaska law." (citing AS 34.40.010)). The statute reads in full:

> Except as provided in AS 34.40.110, a conveyance or assignment, in writing or otherwise, of an estate or interest in land, or in goods, or things in action, or of rents or profits issuing from them or a charge upon land, goods, or things in action, or upon the rents or profits from them, made with the intent to hinder, delay, or defraud creditors or other persons

(continued...)

defraud through a conveyance is a question of fact usually to be proved by circumstantial evidence."[59] Although "[m]any circumstantial factors can indicate the existence of fraud," we have held that "[b]adges of fraud must be viewed within the context of each particular case."[60] Badges of fraud may include the following: "(1) inadequate consideration, (2) transfer in anticipation of a pending suit, (3) insolvency of the transferor, (4) failure to record, (5) transfer encompasses substantially all the transferor's property, (6) transferor retains possession of the transferred premises, (7) transfer completely depletes transferor's assets, and (8) relationship of the parties."[61] In this case the superior court found that seven of these badges of fraud "weigh[ed] strongly in favor of finding that the capitalization of [Merdes Law Office] with the assets of [Merdes & Merdes] was done with the intent to defraud Leisnoi and prevent the payment of the debt owed to Leisnoi." Merdes does not attack any of the superior court's findings of fact on this appeal.

### 1.    Leisnoi was entitled to bring a fraudulent conveyance claim.

Merdes argues that it was error to allow Leisnoi to assert a fraudulent conveyance claim without a "right to [the] property [that was allegedly fraudulently conveyed] created by a judgment," and it highlights a supposed disconnect between

---

[58](...continued)
>of their lawful suits, damages, forfeitures, debts, or demands,
>or a bond or other evidence of debt given, action commenced,
>decree or judgment suffered, with the like intent, as against
>the persons so hindered, delayed, or defrauded is void.

[59]    *Shaffer v. Bellows*, 260 P.3d 1064, 1068 (Alaska 2011) (quoting *Nerox Power*, 54 P.3d at 796).

[60]    *Id.* (quoting *Nerox Power*, 54 P.3d at 796).

[61]    *Id.* at 1068-69 (quoting *Gabaig v. Gabaig*, 717 P.2d 835, 839 n.6 (Alaska 1986)).

Leisnoi's conspiracy to fraudulently convey claim — which the superior court rejected on a motion for directed verdict — and Leisnoi's fraudulent conveyance claim — on which the superior court found for Leisnoi following trial. Merdes argues that the superior court should have rejected both claims.

Granting a directed verdict on the conspiracy claim, the superior court relied on *Summers v. Hagen*[62] to conclude that Leisnoi's failure to reduce our 2013 opinion to a money judgment was fatal. In *Summers* we recognized "a novel theory of liability in Alaska": a creditor's cause of action for damages against the grantee of property for a "fraudulent conveyance scheme."[63] In reaching this decision we rejected the grantee's argument "that creditors' rights should be strictly limited to the remedy provided for by the Fraudulent Conveyances Act, AS 34.40.010."[64] But we required general creditors to "reduce their claims to judgment before asserting this cause of action" for damages, because "[p]rior to judgment, general creditors have no legal right to the property fraudulently conveyed."[65]

Unlike the law of conspiracy developed judicially in this context, the fraudulent conveyance statute does not require a money judgment as the basis of a viable claim to void a conveyance. Alaska Statute 34.40.010 broadly protects against transfers "made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands, or a bond or other evidence of debt given, action commenced, decree or judgment suffered, with the like intent." The question here is whether our 2013 opinion provides the basis for an action on the statute.

---

[62]     852 P.2d 1165 (Alaska 1993).

[63]     *Id.* at 1167-70.

[64]     *Id.* at 1169-70.

[65]     *Id.* at 1170 n.6.

Although the Alaska Rules of Civil Procedure have special requirements for the form of "judgments for the payment of money"[66] that our 2013 opinion did not satisfy, Alaska Appellate Rule 507(a) states that "[t]he opinion of the appellate court, or its order under Rule 214, shall constitute its judgment." Indeed, Merdes acknowledged Leisnoi's legal entitlement when it sought a "stay of execution" from paying "$643,760 to Leisnoi pursuant to Supreme Court Order 6747."[67] And regardless of whether Leisnoi had a money judgment, there is no doubt that our opinion established that Leisnoi had a "lawful suit[], . . debt[], or demand[]" that fell within the broad protection of the statute.

We conclude, therefore, that the superior court's decisions of the fraudulent conveyance claim and the conspiracy to fraudulently convey claim were not inconsistent but in each instance followed the governing law.

---

[66]     Alaska Civil Rule 58.2 requires money judgments to be in the form demonstrated in a sample and to specify certain details, such as the portion of principal that accrues prejudgment interest and the prejudgment interest rate. Merdes highlights the rule's language that "[e]very judgment must be set forth on a separate document distinct from any findings of fact, conclusions of law, opinion or memorandum." But Alaska Appellate Rule 507(a) supersedes the separate document requirement for appellate opinions and judgments. Merdes argues that the court of appeals in *Malutin v. State*, 198 P.3d 1177, 1181-82 (Alaska App. 2009), made "it clear that an appellate court's decision is not an enforceable judgment at all." (Emphasis omitted.) But in *Malutin* the court of appeals, examining the history of Rule 507, concluded that Rule 507(a) was intended to eliminate the requirement that appellate courts issue separate mandates with their instructions to the lower court. *Id.* at 1183.

[67]     *See also* AS 22.05.020(b) (vesting this court "with all power and authority necessary to carry into complete execution all its judgments, decrees, and determinations in all matters within its jurisdiction").

### 2. The superior court did not erroneously award fraudulent conveyance damages.

Merdes argues that the superior court erred in awarding Lesnoi $643,760 on its fraudulent conveyance claim when there was no showing that simply voiding the transfers was not an adequate remedy.[68] We held in *Summers* — when discussing damages for a conspiracy claim — that "[i]f the fraudulent conveyance remedy, i.e., voiding the transfer as to the creditor, is adequate, the plaintiff is not entitled to damages."[69] But if voiding the transfer is not adequate, then "the plaintiff is entitled to damages equalling the lesser of the value of the property fraudulently transferred or the amount of the debt."[70]

It is well established that the usual remedy for fraudulent conveyance is voiding the transfers.[71] Alaska's statutory provision prohibiting fraudulent transfers does not provide any additional remedy.[72] Although Leisnoi will not be made whole until it

---

[68] Merdes cites *Lockhart v. Draper*, 209 P.3d 1025, 1028 (Alaska 2009), as resolving this question. But *Lockhart* did not address whether compensatory damages could be awarded in addition to voiding the transfers; it instead considered whether an equitable remedy was an independent form of relief sufficient to support an award of punitive damages in the absence of compensatory damages. *Id.*

[69] *Summers*, 852 P.2d at 1170.

[70] *Id.*

[71] 37 AM. JUR. 2D *Fraudulent Conveyances and Transfers* § 116 (2013) ("As a general rule, the relief to which a defrauded creditor is entitled in an action to set aside a fraudulent conveyance is limited to setting aside the conveyance of the property which would have been available to satisfy the judgment had there been no conveyance.").

[72] AS 34.40.010 is silent about damages and only states that a fraudulent conveyance "is void." Punitive damages may be available for particularly egregious misconduct even without compensatory damages, but Leisnoi does not appeal the
(continued...)

is paid the full amount of the judgment, the purpose of the fraudulent conveyance action is only to ensure that transferred assets are once again available when Leisnoi seeks to collect from Merdes. If voiding the transaction will return sufficient funds to pay the debt, as it may here,[73] the creditor pursuing only a fraudulent conveyance claim is not entitled to compensatory damages as well.

But in this case, before the fraudulent conveyance claim went to trial, the superior court had already granted summary judgment to Leisnoi on its breach of contract claim and ordered Merdes & Merdes "to repay the $643,760 with interest" because of our 2013 decision. The superior court's later decision following trial analyzed the evidence and legal underpinnings of the fraudulent conveyance and UTPA claims and "order[ed] the following remedies," including compensatory damages, treble damages, and voiding the transfers. The court never tied the compensatory damage award specifically to the fraudulent conveyance claim. The same amount of compensatory damages was independently supported by the court's decisions on the breach of contract claim (previously decided against Merdes & Merdes on summary judgment) and the UTPA claim (decided against all three defendants following trial).

We therefore reject Merdes's argument that the superior court erred by awarding fraudulent conveyance damages. It does not appear to us that the superior court did award damages separately for that claim; the fraudulent conveyance remedy

---

[72](...continued)
superior court's denial of punitive damages. *See, e.g.*, *Lockhart*, 209 P.3d at 1028 ("[T]he court did not err in finding that punitive damages could be awarded if an equitable remedy intended to make the plaintiff whole [i.e., voiding transfers] had been awarded and if the requirements of [the punitive damages provision] are met.").

[73]     The transfers from Merdes & Merdes to Merdes Law Office were calculated by Leisnoi's expert to total about $3.1 million, exceeding the amount Merdes owed Leisnoi.

simply returned transferred assets to Merdes & Merdes, facilitating Leisnoi's collection of damages to which it was otherwise entitled.[74]

### C. The Superior Court Did Not Err By Awarding UTPA Damages.

The Unfair Trade Practices Act declares "unfair or deceptive acts or practices in the conduct of trade or commerce . . . to be unlawful."[75] "As a general matter, a prima facie case of unfair or deceptive acts or practices under the UTPA requires proof of two elements: '(1) that the defendant is engaged in trade or commerce; and (2) that in the conduct of trade or commerce, an unfair act or practice has occurred.' "[76] "[B]ecause the UTPA is a remedial statute, its language should be liberally construed."[77]

In this case the superior court, after concluding that "[a] plaintiff can sue attorneys for violations of the [UTPA]," found that "by definition, having found that [Merdes & Merdes] and Ward Merdes intended to defraud Leisnoi, they also engaged in a deceptive and unfair act [by] which they intended to deceive Leisnoi." Merdes challenges this conclusion on several grounds.

---

[74] Merdes also argues that it is impossible to calculate damages without a dated final judgment because under *Summers*, 852 P.2d at 1170, fraudulent conveyance damages are determined by the value of the fraudulently conveyed assets at the time of the conveyance or when the debt is reduced to judgment, whichever is later. But this rule does not apply to damages based on breach of contract or the UTPA.

[75] AS 45.50.471(a).

[76] *Kenai Chrysler Ctr., Inc. v. Denison*, 167 P.3d 1240, 1255 (Alaska 2007) (quoting *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 534 (Alaska 1980)).

[77] *Alaska Tr., LLC v. Bachmeier*, 332 P.3d 1, 10 (Alaska 2014) (citing *State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 412 (Alaska 1982)).

### 1. Merdes engaged in a trade or business and its conduct was within the scope of that trade or business.

The superior court concluded that Leisnoi was both a "consumer" and a "creditor" at the time of Merdes's deceptive or unfair conduct: "Leisnoi became a consumer of [Merdes & Merdes] when it sought legal services" and the $643,760 debt to Leisnoi was "part of Leisnoi's consumer relationship with [Merdes & Merdes]." The court concluded that these were entrepreneurial or business aspects of the practice of law that were subject to the UTPA.[78]

Merdes argues, however, that the dispute over the $643,760 did not arise in a business context. It asserts that during the time the alleged violations occurred Leisnoi was neither client nor consumer but rather a "potential judgment creditor," and that Merdes, as a debtor, should not be subject to the UTPA.

We have held that debt collectors may be subject to the UTPA insofar as their business is debt collection.[79] We have applied the UTPA to attorneys' debt-collection activities[80] and to the "post-sale" conduct of others. In *Kenai Chrysler* we upheld a jury verdict against a car dealer which "every step of the way . . . actively fought to defeat . . . efforts to rescind [a] sale" to a developmentally disabled buyer who lacked the capacity to contract.[81] Considering the "totality of the[] circumstances" —

---

[78] *Jones v. Westbrook*, 379 P.3d 963, 969 (Alaska 2016) ("Attorneys are not exempt from liability under the UTPA; its regulatory system coexists with the mandates of the Alaska Rules of Civil Procedure and Rules of Professional Conduct." (citing *Pepper v. Routh Crabtree, APC*, 219 P.3d 1017, 1023-25 (Alaska 2009))).

[79] *O'Neill Investigations*, 609 P.2d at 534 (holding debt collection agency was "engaged in trade or commerce as a business entity" and liable under the UTPA).

[80] *Routh Crabtree*, 219 P.3d at 1024-25.

[81] *Kenai Chrysler*, 167 P.3d at 1256.

including the dealer's insistence that the contract was valid, its continued attempts to deal directly with the buyer despite his guardians' intervention, and its failure to timely request legal advice on the subject — we upheld the jury's finding of unfair conduct in the dealer's post-sale attempts to enforce what it argued was a valid contract.[82]

As in *Kenai Chrysler*, Merdes's attempts to recover the money it claimed to be owed were "in the conduct of trade or commerce"[83] and covered by the UTPA. It is true that in 2013 the roles of creditor and debtor flipped: Leisnoi, which had been the debtor, became Merdes's creditor because of the overpayment and Merdes's obligation to return it. It is true that consumer protection laws are often invoked to protect debtors, who may be particularly vulnerable to unfair and deceptive practices.[84] But there is no hard and fast rule that a creditor lacks UTPA protection simply because of its status as creditor. Leisnoi's overpayment, and Merdes's attempts to avoid returning it, are simply successive stages in the same covered activity rooted in Merdes & Merdes's provision of legal services to Leisnoi.

Relatedly, Merdes argues that the conduct at issue arose in an adversarial, litigation-based relationship rather than "a protected 'business relationship.' " We find this argument similarly unpersuasive. The transfer of assets occurred wholly outside the context of judicial proceedings. And although the original debt was reduced to judgment through litigation, it arose from the provision of legal services. Fee disputes are an aspect of the business relationship between an attorney and client, just as payment

---

[82]     *Id.* at 1256-57.

[83]     AS 45.50.471(a).

[84]     *See, e.g.*, *O'Neill Investigations*, 609 P.2d at 529-30 (describing federal regulation of debt-collection activities).

disputes may be a part of any service contract. That the relationship devolves into litigation does not erase its origins in "trade or commerce."

### 2. Merdes's conduct was an "unfair or deceptive practice."

The superior court found that "by definition, having found that [Merdes & Merdes] and Ward Merdes intended to defraud Leisnoi, they also engaged in a deceptive and unfair act" under the UTPA. The court added that "[i]mplicit in these findings is that [Merdes Law Office] was part and parcel of the deceptive and unfair acts."

A practice must be either unfair or deceptive to be covered by the UTPA.[85] When determining whether a practice is unfair under the broad prohibition of AS 45.50.471(a), we have adopted a "multi-factored approach" that considers:

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers . . . .[86]

In contrast, "whether an act is 'deceptive' is determined simply by asking whether it 'has the capacity or tendency to deceive.' "[87]

The superior court's findings on unfairness were consistent with our multi-factor test. First, transferring assets to avoid paying a debt is more than simply within

---

[85]    *Borgen v. A & M Motors, Inc.*, 273 P.3d 575, 591 (Alaska 2012) ("The two terms ["unfair" and "deceptive"] are used in the disjunctive in section .471(a), and either will suffice to give rise to liability.").

[86]    *Id.* at 590 (quoting *Kenai Chrysler*, 167 P.3d at 1255).

[87]    *Id.* at 591 (quoting *ASRC Energy Servs. Power & Commc'ns, LLC v. Golden Valley Elec. Ass'n*, 267 P.3d 1151, 1160 (Alaska 2011)).

"the penumbra of some common-law, statutory, or other established concept of unfairness" — it is prohibited by statute.[88] Second, the superior court found that "the true and primary intention of [the transfers was] to keep the $643,760 out of the reach of Leisnoi"; when an attorney acts with fraudulent intent it is most likely unethical, as Merdes acknowledges in its brief.[89] And third, the transfers caused a substantial harm by denying Leisnoi access to funds from which it could satisfy a valid debt. Thus, all three factors support a finding that the transfers were unfair for purposes of the UTPA.

Merdes focuses on a single sentence in the superior court's decision, where it pointed to a "statement [by Ward Merdes] to [Leisnoi's attorney] that [Merdes & Merdes] no longer ha[d] assets to pay Leisnoi" as evidence of Merdes's intent to defraud Leisnoi. Merdes argues that this statement was made during litigation and was mere "puffing," which is not actionable under the UTPA. But we read the court's reliance on that statement not as identifying the deception at issue but as further support for its finding of intent to defraud. The deceptive and unfair act was the fraud itself — "the capitalization of [Merdes Law Office] with the assets of [Merdes & Merdes] . . . done with the intend to defraud Leisnoi and prevent the payment of the debt owed to Leisnoi," which the court had already described extensively by reference to the "badges of fraud."

### 3. The Alaska Bar Rules do not exempt Merdes from UTPA liability.

Merdes argues that "Leisnoi can't have it both ways" and pursue both the UTPA and Alaska Bar discipline; according to Merdes the UTPA exempts activities regulated by a state entity like the Alaska Bar Association, and the superior court's

---

[88]    AS 34.40.010.

[89]    Merdes argues that "[i]f Ward Merdes, in his role as an attorney, defrauded his client," it is a violation of professional ethics rules and the UTPA should not be interpreted to govern the same conduct. We address this argument below.

finding of UTPA liability usurps our authority over attorney discipline.[90]  But our decision in *Pepper v. Routh Crabtree, APC* forecloses both these arguments.[91]

Alaska Statute 45.50.481(a)(1) "exempts unfair acts and practices from the purview of the UTPA 'only where [(1)] the business is both *regulated* elsewhere and [(2)] the unfair acts and practices are therein prohibited.' "[92]  Merdes asserts that its alleged misconduct — mishandling of client funds — "is at the *very core* of the State Bar's regulatory mission and subject to its strictest oversight," unlike the third-party debt-collection activities at issue in *Routh Crabtree.*  (Emphasis in original.)  But "[w]e have held that the Rules of Civil Procedure and the Rules of Professional Conduct are not the type of ongoing, careful regulation required to trigger an exemption under subsection .481(a)(1)" of the UTPA.[93]  Merdes's argument does not persuade us otherwise.

Merdes also asserts that the superior court "used the UTPA to take regulatory decisions away from" this court and the Alaska Bar Association because the superior court's decision would "put the Merdes Defendants out of business through the imposition of UTPA treble damages."  But in *Routh Crabtree* we approved an observation made by both the Washington and Connecticut supreme courts that " 'the judicial disciplinary system and consumer protection laws have different functions' and

---

[90]     Merdes asserts in its brief that Leisnoi filed a bar grievance related to Ward Merdes's conduct.  The record of that matter is not before us.

[91]     219 P.3d 1017, 1024-25 (Alaska 2009).

[92]     *Id.* at 1024 (alterations and emphasis in original) (quoting *Smallwood v. Cent. Peninsula Gen. Hosp.*, 151 P.3d 319, 329 (Alaska 2006)).

[93]     *Id.* at 1024 (citing *Matanuska Maid, Inc. v. State*, 620 P.2d 182, 186 (Alaska 1980)).

that there was 'no reason why they cannot coexist.' "[94] "[T]he attorney disciplinary system and consumer protection laws can coexist as long as the legislature does not purport to take away this court's exclusive power to admit, suspend, discipline, or disbar."[95] Despite the substantiality of the money judgment in this case, it does not in and of itself exclude Ward Merdes from bar membership or prevent him from practicing as an attorney. The imposition of liability under the UTPA does not unconstitutionally infringe on our authority to regulate the practice of law.

Merdes urges us to reconsider *Routh Crabtree* to the extent it allows the application of the UTPA to attorney conduct that the Bar also regulates.[96] We did state in *Routh Crabtree* that "[i]n rejecting these arguments here, we do not mean to foreclose the possibility that future litigants might address these issues more persuasively on appeal."[97] But we recently reaffirmed that attorney conduct is not exempt from UTPA liability,[98] and Merdes's arguments do not persuade us that we were mistaken.

---

[94]    *Id.* (discussing *Short v. Demopolis*, 691 P.2d 163, 170 (Wash. 1984) (en banc) (citing *Heslin v. Conn. Law Clinic of Trantolo & Trantolo*, 461 A.2d 938 (Conn. 1983))).

[95]    *Id.* at 1024-25.

[96]    Merdes implies that the holdings were part of an "alternative analysis" and we "expressly did not affirm the trial court based on the reasoning" we rely on here. (Emphasis omitted.) But *Routh Crabtree* reversed the trial court's decision; implicit in the reversal was our rejection of alternative grounds for affirmance. *Id.* at 1025.

[97]    *Id.* at 1025 n.51.

[98]    *Jones v. Westbrook*, 379 P.3d 963, 969 (Alaska 2016) ("Attorneys are not exempt from liability under the UTPA; its regulatory system coexists with the mandates of the Alaska Rules of Civil Procedure and Rules of Professional Conduct." (citing *Routh Crabtree*, 219 P.3d at 1023-25)).

## 4. The superior court properly trebled Leisnoi's damages.

Under the UTPA, "[a] person who suffers an ascertainable loss of money or property as a result of another person's" unfair or deceptive practice "may bring a civil action to recover for each unlawful act or practice three times the actual damages or $500, whichever is greater."[99] Merdes argues that because the fraudulent conveyance remedy does not include monetary damages, "[t]here is nothing to treble." But the court awarded $643,760 in compensatory damages for Leisnoi's breach of contract claim, which also provided the basis for "actual" UTPA damages.[100]

Merdes argues that there is no causal link between the alleged unfair conduct and the damages awarded. It again focuses on Ward Merdes's statement about Merdes & Merdes's insolvency, arguing that the statement, even if deceptive, could not have caused Leisnoi to pay $643,760 three years earlier. But it was not Leisnoi's payment of the money that was the deceptive or unfair conduct, but rather Merdes's later actions to avoid repaying it. But for the fraudulent transfers, Leisnoi would have been able to recover what it was owed.[101]

Merdes also argues that this case could result in "a double recovery" and a "legal quagmire" because in addition to the superior court judgment for treble damages, "Leisnoi can still attempt to reduce this Court's 02/01/13 Decision on its original claims

---

[99]  AS 45.50.531(a).

[100]  Black's Law Dictionary defines actual damages as "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." *Damages*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[101]  Merdes's reply brief also raises the new argument that Leisnoi did not suffer an "ascertainable loss" because it did not "bargain" for the debt. But Merdes waived this argument. *Barnett v. Barnett*, 238 P.3d 594, 603 (Alaska 2010) ("Because we deem waived any arguments raised for the first time in a reply brief, we do not here reach the merits of these issues.").

to a judgment in the original amount of $643,670 and seek to enforce it." But the superior court's decisions clearly state that the $643,670 owed under our 2013 decision is the basis of the compensatory damage award. We do not share Merdes's fear that this will be misinterpreted.

**D.    The Award Of Prejudgment Interest Was Not Erroneous Except For The Application Of The Same Starting Date To All Three Defendants.**

The revised final judgment included an award of prejudgment interest of $140,956.98 on the amount of the overpayment, $643,760, calculated from July 28, 2010. Merdes argues that prejudgment interest should run instead from early 2013, following the publication of our opinion — from either the date of a letter from Leisnoi to Merdes demanding repayment or the date Leisnoi filed suit two months later. Under AS 09.30.070(b), "prejudgment interest accrues from the day process is served on the defendant or the day the defendant received written notification that an injury has occurred and that a claim may be brought against the defendant for that injury, whichever is earlier." "[D]espite AS 09.30.070(b)'s express reference to written notice, the 'statutory requirement of written notice may be satisfied by proof of actual notice.' "[102]

Leisnoi contends that Merdes had "actual notice that Leisnoi demanded return of the money" at the time Leisnoi paid it — July 28, 2010 — "because Leisnoi had already appealed the writ requiring Leisnoi to pay that amount." Although initially siding with Merdes on this issue, the superior court ultimately adopted Leisnoi's position, and we agree that this was correct. Merdes had actual notice in July 2010 that Leisnoi continued to contest Merdes's entitlement to the money and would demand repayment, with interest, if Leisnoi prevailed on appeal. There is no unfairness in holding Merdes & Merdes to that date.

---

[102]    *Pagenkopf v. Chatham Elec., Inc.*, 165 P.3d 634, 645 (Alaska 2007) (quoting *McConkey v. Hart*, 930 P.2d 402, 404 (Alaska 1996)).

Merdes also argues that the court erred when it included the prejudgment interest amount in the total judgment for which all three defendants are liable, because repaying Leisnoi's overpayment was the obligation of Merdes & Merdes alone. Merdes points to the superior court's earlier written decision on Merdes's objections to Leisnoi's proposed judgment, in which the court ruled that because "only Merdes & Merdes is liable for the underlying debt . . . , only Merdes & Merdes is liable for the prejudgment interest on that debt." Merdes calls the inclusion of the amount in the final judgment against *all* defendants "plain error warranting reversal."

We agree that the overpayment was, as of July 2010, Merdes & Merdes's obligation alone; Merdes Law Office and Ward Merdes did not become liable for it until judgment was entered against them jointly and severally in this lawsuit. We remand this issue so the superior court can either explain why the same prejudgment interest commencement date applies to all three defendants or recalculate prejudgment interest to reflect the different dates on which they became liable for the underlying debt.[103]

## V. CONCLUSION

The judgment of the superior court is AFFIRMED except for the application of prejudgment interest to the various defendants. We REMAND that issue for further consideration.

---

[103] Merdes also argues that the superior court erred by making an excessive award of costs in the final judgment. But Leisnoi concedes this was error and points out that the superior court corrected it in the revised final judgment. We see no reason to address the issue further.

Last, Merdes asks that we reassign the case on remand to a different trial judge. No recusal motion was made below, and we do not consider the issue in the first instance.