*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| In the Disciplinary Matter Involving ) | |
| ) | Supreme Court No. S-18006 |
| WARD M. MERDES, Attorney. ) | ABA File No. 2015D084 |
| ) | |
| ) | O P I N I O N |
| ) | |
| ) | No. 7627 – October 14, 2022 |

Appeal from the Alaska Bar Association Disciplinary Board.

Appearances: Mark Choate, Choate Law Firm LLC, Juneau, for Ward Merdes. Louise R. Driscoll, Assistant Bar Counsel, Anchorage, for Alaska Bar Association.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

CARNEY, Justice.

## I.  INTRODUCTION

The same day an attorney's long-existing law firm was ordered to return over $643,000 to a former client, the attorney closed that firm and began transferring its assets to a recently formed law firm and to himself. The attorney then told the former client that the old law firm did not have sufficient assets to return the funds. In subsequent civil litigation between the attorney and the former client, the superior court found the attorney and both law firms liable under a consumer protection statute for nearly $2 million in damages.

The Alaska Bar Association initiated disciplinary proceedings against the

attorney. After a four-day hearing, an area hearing committee found that the attorney had intended to defraud his former client by transferring the old firm's assets to the new firm and to himself and had misrepresented his old firm's ability to pay in violation of professional conduct rules. The Bar Association's Disciplinary Board adopted the hearing committee's findings and conclusions and recommended that we suspend the attorney from the practice of law for one year and order him to pay $3,000 in fees and costs. The attorney appeals, arguing that there is insufficient evidence to support the area hearing committee's (and therefore the Board's) finding, by clear and convincing evidence, that he intended to defraud the former client.

We agree that the attorney's conduct violated professional conduct rules, but we conclude that the Board's recommended sanction is too lenient. We therefore suspend the attorney from the practice of law for four years and order him to pay $3,000 in fees and costs to the Bar.

## II. FACTS AND PROCEEDINGS

The events leading up to this disciplinary action against Ward Merdes took place over the course of more than three decades. We have considered the underlying facts in two previous cases: *Leisnoi, Inc. v. Merdes & Merdes, P.C.* (*Leisnoi I*)[1] and *Merdes & Merdes, P.C. v. Leisnoi, Inc.* (*Leisnoi II*).[2] Because disciplinary matters are "fact-specific" we state the facts of this matter "in detail."[3]

### A. 1988 through January 31, 2013

In 1988 attorney Ed Merdes began representing Leisnoi, Inc., an Alaska Native corporation, in a dispute with Omar Stratman over title to lands on Kodiak

---

[1] 307 P.3d 879 (Alaska 2013).

[2] 410 P.3d 398 (Alaska 2017).

[3] *In re Disciplinary Matter of Miles*, 339 P.3d 1009, 1010 (Alaska 2014).

Island.[4] Leisnoi and Ed Merdes entered into a contingency fee agreement that entitled Ed Merdes to an undivided 30% interest in the disputed lands or any settlement that Leisnoi obtained or retained as a result of the litigation.[5]

Ed Merdes and his son Ward Merdes formed the law firm Merdes & Merdes, P.C. in 1990. Ed Merdes died in 1991.[6] Merdes & Merdes continued to represent Leisnoi in the title dispute against Stratman.[7] The litigation resolved in Leisnoi's favor in 1992, although appeals continued until 2008.[8]

Following the favorable judgment, Leisnoi challenged the validity of its contingency fee agreement.[9] The dispute was resolved by arbitration through the Alaska Bar Association in 1994.[10] The arbitration panel awarded Merdes & Merdes a $721,000 contingent fee based on 30% of Leisnoi's land value, plus interest, and $55,000 in court-awarded prevailing party attorney's fees.[11] In 1995 the superior court affirmed the arbitration award and entered a judgment in favor of Merdes & Merdes.[12] However, during the fee dispute and ensuing litigation, the relationship between Merdes & Merdes and Leisnoi soured; Leisnoi's vice president alleged that Ed Merdes had lied and cheated

---

[4]     *Leisnoi I*, 307 P.3d at 882.

[5]     *Id.*

[6]     *Leisnoi II*, 410 P.3d at 401.

[7]     *Id.* at 401-02.

[8]     *Leisnoi I*, 307 P.3d at 882-83.

[9]     *Id.* at 883.

[10]     *Id.*

[11]     *Leisnoi II*, 410 P.3d at 402.

[12]     *Id.*

Leisnoi, and stated that "th[e] whole [arbitration] process smack[ed] of racism."

Leisnoi made annual payments, totaling $800,000,[13] to Merdes & Merdes until 2002.[14] In 2009 Merdes & Merdes sought a writ of execution for the remainder of the arbitration award — $643,760 — which the superior court granted in 2010.[15] Leisnoi paid the $643,760 to Merdes & Merdes, but immediately appealed the superior court's ruling.[16] While the appeal was pending, Ward Merdes incorporated a new law firm, Merdes Law Office, P.C. on January 17, 2013.

B.      February 1, 2013 through 2017

On February 1, 2013 we reversed the superior court's writ of execution and held that "Leisnoi's contingency fee agreement with [Merdes & Merdes] violated [the Alaska Native Claims Settlement Act's] prohibition against contingency fee agreements, as did the Arbitration Panel's fee award, the superior court's 1995 entry of judgment, and the 2010 writ of execution."[17] We held that Leisnoi was therefore entitled to recover the $643,760 plus interest paid as a result of the writ.[18] But we also held that Leisnoi "could not recover the $800,000 it paid before 2010."[19] And we observed that "[Merdes & Merdes] may seek to recover any fees it believes are owed under a theory of quantum

---

[13]      *Id.* at 407 n.57 (noting that the court a previously "described [the] payments as totaling $700,000" but that "both parties describe the amount paid as 'roughly $800,000' or simply '$800,000.' ").

[14]      *Id.* at 402.

[15]      *Id.*

[16]      *Id.*

[17]      *Leisnoi I*, 307 P.3d at 894.

[18]      *Id.*; *Leisnoi II*, 410 P.3d at 402.

[19]      *Leisnoi II*, 410 P.3d at 402.

meruit."[20]  On rehearing we "express[ed] no opinion whether [Merdes & Merdes] is entitled to the remedy of quantum meruit" or on the merits of Leisnoi's potential defenses because "[t]hese and related issues are matters for the superior court to address."[21]

Merdes Law Office began operating the same day our opinion was released. Merdes & Merdes's clients signed agreements transferring client representation to Merdes Law Office.  The case and client transfer agreements stated that "as of 01/31/2013 Merdes & Merdes, P.C. closed its doors.  Effective 02/01/2013, Merdes Law Office, P.C. opened its doors."  The agreements provided that any money to which Merdes & Merdes might be entitled or that was owed by the client would be paid to Merdes Law Office.  Merdes & Merdes's remaining assets were transferred to Merdes Law Office and to Ward Merdes, except for approximately $80,000 which was deposited in the court registry, and the debt to Leisnoi remained on Merdes & Merdes's books. When Leisnoi's general counsel contacted Ward Merdes days later, Ward Merdes told him that Merdes & Merdes did not have the assets to repay Leisnoi.

In response to Leisnoi's demand for payment, Merdes & Merdes sought a stay of execution in March 2013 "until its 'competing claim' for quantum meruit could be resolved."[22]  Ward Merdes submitted an affidavit in which he attested "that Merdes & Merdes 'does not have anywhere near enough money to return $643,760 to Leisnoi pursuant to [the] Supreme Court Order.  It doesn't have 1/5th of that amount.' "[23]  The superior court denied Merdes & Merdes's motion to stay.  It noted the contention that

---

[20]     *Leisnoi I*, 307 P.3d at 894.

[21]     *Id.*

[22]     *Leisnoi II*, 410 P.3d at 403.

[23]     *Id.*

Merdes & Merdes had an "unqualified quantum meruit claim" was an inaccurate characterization of our equivocal statements that Merdes & Merdes "may file an action" and "may seek to recover" under a theory of quantum meruit[24] which did not indicate whether the claim had merit.

In May Leisnoi brought a separate action against Merdes & Merdes, Merdes Law Office, and Ward Merdes in which it alleged, among other things, violations of the Unfair Trade Practices Act (UTPA)[25] and unjust enrichment.[26] The defendants denied Leisnoi's allegations and Merdes & Merdes filed a counterclaim seeking "attorney's fees framed as a claim for quantum meruit."[27] In November the superior court concluded that Merdes & Merdes's attempt to recover its fees in quantum meruit was barred by res judicata and the statute of limitations and granted Leisnoi's motion for summary judgment on the counterclaim.[28] The court also granted summary judgment on Leisnoi's breach of contract claim and ordered Merdes & Merdes to repay Leisnoi $643,760 plus interest to comply with the mandate in our decision.[29]

The superior court held a bench trial on the remaining claims.[30] The court found that the transfer of assets from Merdes & Merdes to Merdes Law Office and Ward

---

[24]    *Leisnoi I*, 307 P.3d at 882, 894.

[25]    *See* AS 45.50.471-.561 (regulating commercial trade practices, providing consumer protections, and imposing treble damages for violations).

[26]    *See Leisnoi II*, 410 P.3d at 403.

[27]    *Id.*

[28]    *Id.*

[29]    *Id.*

[30]    *Id.*

Merdes was "simply not defensible" and was fraudulent.[31] It highlighted that "[t]he quantum mer[ui]t claim, on February 1, 2013, had little or no value" and that Merdes had "produced no credible testimony that supported the notion that a willing buyer existed to prosecute the claim." The court concluded that "if Ward Merdes was truly moving his business and shutting down [Merdes & Merdes], [Merdes Law Office] should have purchased the quantum mer[ui]t claim and [Merdes & Merdes] could have remained sufficiently liquid to honor its debts."

The superior court also found that seven of eight badges of fraud[32] were present which "weigh[ed] strongly in favor of finding that the capitalization of [Merdes Law Office] with the assets of [Merdes & Merdes] was done with the intent to defraud Leisnoi and prevent payment of the debt owed to Leisnoi."[33] The court also found that all three defendants — Merdes & Merdes, Merdes Law Office, and Ward Merdes — violated the UTPA by participating in the fraudulent transfer of assets.[34] The court therefore voided the transfers from Merdes & Merdes and found all three defendants

---

[31]    *Id.*

[32]    *See Shaffer v. Bellows*, 260 P.3d 1064, 1068-69 (Alaska 2011) (" 'Many circumstantial factors can indicate the existence of fraud' . . . . Typical badges of fraud include: '(1) inadequate consideration, (2) transfer in anticipation of a pending suit, (3) insolvency of the transferor, (4) failure to record, (5) transfer encompasses substantially all the transferor's property, (6) transferor retains possession of the transferred premises, (7) transfer completely depletes transferor's assets, and (8) relationship of the parties.' " (first quoting *Nerox Power Systems, Inc. v. M–B Contracting Co.*, 54 P.3d 791, 796 (Alaska 2002); and then quoting *Gabaig v. Gabaig*, 717 P.2d 835, 839 n.6 (Alaska 1986))).

[33]    *Leisnoi II*, 410 P.3d at 403 (alterations in original).

[34]    *Id.*

jointly and severally liable for Leisnoi's compensatory damages.[35] The court trebled this amount to $1,931,280 based upon the UTPA.[36]

The defendants appealed, asking us to reverse "(1) [the] summary judgment against Merdes & Merdes on its quantum meruit claim; (2) the finding of liability and award of damages for fraudulent conveyance; (3) the award of damages for violation of the UTPA; and (4) the award of prejudgment interest."[37] In 2017 we affirmed the superior court "except for the application of prejudgment interest to the various defendants."[38]

### C.    Bar Proceedings

In January 2019 Bar Counsel petitioned for a formal disciplinary hearing against Ward Merdes (hereafter Merdes) before an area hearing committee.[39] The petition alleged that Merdes had violated the Alaska Rules of Professional Conduct and it listed four counts of misconduct during the fee dispute between Merdes & Merdes and Leisnoi.

The first three counts alleged that Merdes violated sections of Professional Conduct Rule 1.15 regarding the safekeeping of property. Count 1 alleged that Merdes violated Professional Conduct Rule 1.15(a) by failing to hold Leisnoi's monies separate

---

[35]    *Id.*

[36]    *Id.*

[37]    *Id.* at 404.

[38]    *Id.* at 415.

[39]    *See* Alaska Bar R. 25(d) ("A decision by Bar Counsel to initiate formal proceedings before a Hearing Committee will be reviewed by the Board Discipline Liaison prior to the filing of a formal petition.").

from his own property.[40]  Count 2 alleged that he violated Professional Conduct Rule 1.15(d) by failing to promptly deliver Leisnoi funds to which it was entitled.[41]  And Count 3 alleged that after learning of Leisnoi's appeal of the writ of execution, Merdes violated Professional Conduct Rule 1.15(e) by failing to safeguard the disputed funds and by failing to set aside monies that would be available if the court ordered him to return funds to Leisnoi.[42]

The petition's fourth allegation claimed Merdes engaged in professional misconduct by "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation," in violation of Professional Conduct Rule 8.4(c).  The petition specifically charged that Merdes had transferred Merdes & Merdes's assets to Merdes

---

[40]    Alaska Rule of Professional Conduct 1.15(a) states in pertinent part that "[a] lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property."

[41]    Alaska Rule of Professional Conduct 1.15(d) states:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person.  Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding the funds or property.

[42]    Alaska Rule of Professional Conduct 1.15(e) states:

> When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim conflicting interests, the property shall be kept separate by the lawyer until the dispute is resolved.  The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

Law Office "to avoid repaying attorney's fees to Leisnoi in violation of the Unfair Trade Practices Act [and t]he true and primary intention of the transfers was to keep $643,760 out of the reach of Leisnoi."

As provided by Alaska Bar Rule 22,[43] a three-member area hearing committee held a formal hearing over the course of four days in November 2019. The committee heard testimony from nine witnesses, seven of whom were members of the Alaska Bar Association.

Bar Counsel began the hearing by calling Jana Turvey, Leisnoi's president and chief executive officer. She testified that, although Leisnoi won the initial litigation against Stratman, the lawsuit had put a large financial strain on the corporation and caused it to go into debt. She stated that although Leisnoi paid Merdes & Merdes the outstanding $643,760 pursuant to the superior court's order, the corporation had made it clear that it did so under protest. Turvey explained that Leisnoi could not begin developing and leasing lands until the litigation was fully resolved and Leisnoi held clear title to its lands. Because the corporation was in a dire financial condition, Leisnoi had secured a loan and paid Merdes & Merdes directly — instead of placing the disputed funds in the court registry — or posting a bond so that it could begin to generate revenue through its lands. She said Leisnoi then immediately filed an appeal to resolve its protest. Turvey testified that after our 2013 opinion,[44] Merdes told Leisnoi's counsel that "Merdes & Merdes law firm did not have the assets available to it . . . to pay the claim[;] . . . in essence, all the assets were gone."

Next, Bar Counsel called Ronald Greisen, a certified public accountant and

---

[43]     *See* Alaska Bar R. 22 (e)-(f) (providing petition will be assigned to area hearing committee for hearing).

[44]     *Leisnoi I*, 307 P.3d 879, 894 (Alaska 2013) (holding that Leisnoi was entitled to recover the $643,760 it had paid to Merdes & Merdes).

financial forensic examiner, as an expert witness regarding the asset transfers from Merdes & Merdes to Merdes Law Office and Merdes. After Leisnoi made its $643,760 payment, it commissioned Greisen to examine asset transfers from Merdes & Merdes to Merdes Law Office and Merdes beginning in 2010 when Leisnoi paid the $643,760 to Merdes & Merdes. He documented his findings in a final report in 2014. Greisen testified that his analysis of the transfers led him to conclude that there were "badges of fraud in conveyances from Merdes & Merdes to both Merdes Law Office and Ward Merdes." He testified that beginning on July 30, 2010 – when Leisnoi filed its appeal — to February 2013, transfers for inadequate consideration in the amount of $3,099,910 were made from Merdes & Merdes to Merdes Law Office and Merdes. Of that sum, the total amount transferred to Merdes Law Office was $1,043,598 and to Merdes personally was $2,056,312. Greisen stated: "[M]y opinion is the fact that everything transferred over except the debt owed to Leisnoi and [$]80,000 deposited with the court is a strong indication that the transfer was done to avoid paying the debt to Leisnoi." Greisen also testified that Merdes & Merdes had sufficient contingent assets — such as settlements due from clients' cases — to pay Leisnoi when Leisnoi demanded payment immediately following our 2013 decision. Greisen also noted that Merdes & Merdes had borrowing power and that Merdes, as the sole shareholder, could have paid Leisnoi on behalf of the firm.

Bar Counsel called Merdes as its third witness. Merdes testified that his father had handled the majority of Leisnoi's litigation against Stratman and that it was "[a]n insane amount of work" requiring "thousands of hours." Merdes testified that when Leisnoi stopped making payments to Merdes & Merdes, he reduced the arbitration award to a judgment and sought a writ of execution to enforce the judgment. Merdes acknowledged that he was motivated in part by his desire to protect his father's legacy, "[b]ut not so much that I was looking to jerk Leisnoi around. I wanted [the judgment]

paid." He also acknowledged that Leisnoi's chief executive officer at the time, Frank Pagano, had filed an affidavit implying Merdes's father was a "liar and a cheat" and accusing him of forging Leisnoi's president's signature on the disputed contingency fee agreement. Merdes testified that he thought the accusations were "beyond wrong" and that he had sued Pagano, alleging negligent infliction of emotional distress. He testified that Pagano's affidavit had so affected him that his marriage suffered, he experienced physical distress, and — at his wife and a friend's suggestion — he sought psychiatric treatment to address his anger and frustration.

Merdes acknowledged that he told Leisnoi's counsel that Merdes & Merdes did not have the assets to pay Leisnoi as early as February 1, 2013. He testified that he told Leisnoi that Merdes & Merdes would not pay anything until its quantum meruit claim was liquidated and the offset was appropriately calculated. On cross-examination Merdes stated that it had never occurred to him that an attorney was duty bound to preserve funds paid on a judgment when the judgment debtor had filed an appeal. He testified that he "legitimately and genuinely [had] thought there wasn't a snowball's chance in heck" Leisnoi's appeal would prevail. But he also testified that shortly after *Leisnoi I*[45] was published he had called former Bar Counsel Stephen Van Goor for advice about whether moving assets from Merdes & Merdes could be considered a fraudulent conveyance.

Bar counsel called Merdes's wife as a witness. She stated that she had been responsible for the firm's bookkeeping and accounting since 2005. She testified that Merdes had been planning to bring their nephew into the practice after he finished law school and that they had created the new firm for this purpose. She stated that they filed articles of incorporation for Merdes Law Office in October 2012, and the State accepted

---

[45]     *Id.* at 879 (published Feb. 1, 2013).

them in January 2013. She confirmed that client transfer agreements were executed shortly after our 2013 opinion and that all of Merdes & Merdes's clients transferred to Merdes Law Office. She acknowledged that the new firm used the same phone number and address as well as the same vendors, insurance, office equipment, and desks as Merdes & Merdes. Merdes's wife testified that Merdes Law Office took over the lease from Merdes & Merdes, and that all of the employees from the old firm were given new employment agreements and transferred to the new firm. She testified that she had set up an operating account for Merdes Law Office in February 2013 and that the new firm deposited its first settlement check on February 15, 2013 in the amount of $115,500.

The Bar's final witness was Van Goor, who was qualified as an expert in the field of legal ethics including Alaska's ethics opinions and the Alaska Rules of Professional Conduct. Van Goor testified about a conversation he had with Merdes in mid-February 2013 regarding starting a new law office and transferring clients from Merdes & Merdes to the new office. Van Goor stated that Merdes was concerned about taking money from an old firm that was subject to execution. Van Goor testified that he told Merdes he would need to consult with an expert and could not give him an immediate response. Van Goor consulted with an attorney specializing in bankruptcy. When Van Goor later reached Merdes, he relayed the expert's assessment that "any transfer of assets in light of the judgment would likely be considered fraudulent." Van Goor testified that he had been aware of the anger the fee dispute with Leisnoi had caused Merdes and that Merdes's "concern and his anger . . . may have affected" his judgment. But Van Goor also stated that his impression of Merdes was that "he wanted to stay within the lines [of the law] and get a resolution to what he thought was an unfair situation."

Merdes recalled his wife as his first witness. She testified that Merdes began thinking about starting a new firm in 2008, when their nephew was considering

going to law school, and that by late 2009 they had ordered shirts and letterhead printed with the new firm name. She testified that after he graduated in May 2013, their nephew began working as a law clerk at Merdes Law Office.

Merdes next called Michael Schneider, an attorney, as a witness. Schneider testified that he was acquainted with Merdes through various professional conventions and activities, and that they had maintained a long professional relationship working together and across from one another. Schneider characterized Merdes as "meticulous[,] . . . honest[,] and demanding." Schneider testified that he did not think Merdes had engaged in fraud by transferring cases from Merdes & Merdes to Merdes Law Office. Schneider testified that he had once represented Stratman and was aware that Stratman had offered to buy the quantum meruit claim from Merdes in exchange for the Lathrop Building, a large office building in Fairbanks, in 2013, but Merdes rejected the offer. He recalled being told that the Fairbanks property was worth about two and a half to three million dollars.

Another attorney, Douglas Johnson, testified next. He stated that he knew Merdes as "a fellow plaintiff's attorney" and a friend, and his daughter had once worked for Merdes. He described Merdes as "totally honest" and a "stand up, straight shooter guy."

Alicemary Rasley, an attorney and former magistrate judge, testified after Johnson. She testified that she knew Merdes professionally and that he had occasionally tried cases before her when she served as a magistrate. She characterized Merdes as a "rule follower" and "incredibly fair."

Next, Merdes called Brad Kane to testify. Kane, an attorney, was a "close friend" of Merdes and represented him in both trial court and appellate proceedings against Leisnoi. Kane stated that he had also worked with Merdes in other professional capacities on a number of occasions. Kane testified that he had advised Merdes to

pursue his quantum meruit claim and that Merdes had said he believed the claim was "worth about 30 million." Kane also testified that Stratman had offered to purchase Merdes's quantum meruit claim in exchange for the Fairbanks property, but that Merdes had rejected the offer. Kane testified that Merdes believed the Lathrop Building had been worth more than one million dollars.

Lastly, Merdes testified on his own behalf. He testified that he had not intended to fraudulently transfer assets and believed he was leaving Merdes & Merdes with a valuable quantum meruit claim. Merdes stated he believed *Leisnoi I* awarded him a quantum meruit claim "instead of the . . . arbitration award." He testified that "within a couple weeks" of the decision, Stratman offered to purchase his quantum meruit claim in exchange for the Lathrop Building, but that he rejected the offer because he believed Leisnoi was going to pay a large sum to Merdes & Merdes. He stated that he understood Stratman wanted the "claim against Leisnoi so that he could bring Leisnoi to the table . . . [to] negotiate . . . and take some of the land that he ha[d] been fighting with Leisnoi over for the last two decades." Merdes testified that he closed Merdes & Merdes and started Merdes Law Office to have his nephew join the practice.

The area hearing committee issued its findings of fact and conclusions of law in May 2020. It unanimously found that Merdes had not committed any of the first three alleged violations of Professional Conduct Rule 1.15. But two of the three committee members found that Merdes had violated Professional Conduct Rule 8.4(c). The committee specifically rejected Merdes's explanation that he had formed Merdes Law Office to welcome his nephew into the practice. The committee concluded that

> moving all assets of Merdes & Merdes into the new firm . . . and leaving only Leisnoi as the only unpaid creditor is clear and convincing evidence of intent to hinder or delay Leisnoi's recovery. This analysis is supported by the timing of the transfers immediately after the Supreme Court's

decision on February 1, 2013. It is also bolstered by Mr. Merdes'[s] misrepresentation to Leisnoi's counsel that Merdes & Merdes no longer had assets to pay Leisnoi.

The committee therefore found that the Bar had proven Merdes violated Professional Conduct Rule 8.4(c).[46]

The committee then analyzed the appropriate sanction according to the American Bar Association's Standards For Imposing Lawyer Sanctions (ABA Standards) by considering the duties Merdes violated, his mental state, the injury his conduct caused, and potential aggravating and mitigating circumstances.[47] It determined that Merdes had violated his duty of candor[48] and his duty to the public[49] by fraudulently conveying assets from Merdes & Merdes to Merdes Law Office without consideration in an effort to hinder and delay payment to Leisnoi. It also determined that Merdes violated his duty of candor when he told Leisnoi that his former firm did not have the assets to pay Leisnoi after deliberately transferring them in an effort to keep them from Leisnoi's successful collection.

---

[46] In dissent, the third member of the committee found that, while the asset transfers were "clearly wrong," there was not "clear and convincing evidence" of "fraudulent intent." However, the dissenting member did agree with the majority's conclusion that Merdes's representation to Leisnoi "that [Merdes & Merdes] had no funds available to pay the judgment" was "both false and made with the intent to deceive Leisnoi."

[47] STANDARDS FOR IMPOSING LAWYER SANCTIONS (1986) (AM. BAR ASS'N amended 1992).

[48] *See id.* § 4.6 (describing lack of candor as "cases where the lawyer engages in fraud, deceit, or misrepresentation directed toward a client").

[49] *See id.* § 5.1 (describing failure to maintain personal integrity as "cases involving commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit, or misrepresentation").

The committee found by clear and convincing evidence that Merdes's mental state was "intent," evidenced by his "obsess[ion] with the goal" of exacting revenge on Leisnoi, the timing of the transfers from his former firm to his new firm, and the fact that Leisnoi was the sole creditor left on Merdes & Merdes's books. The committee was not convinced that he had opened a new law firm to welcome his nephew, and concluded that his true intent was "to strip Merdes & Merdes of recoverable assets and to thwart Leisnoi."[50] The committee majority found by clear and convincing evidence that Merdes's actions had caused Leisnoi actual injury by depriving it of a substantial sum of money over a period of years and by causing Leisnoi to engage in prolonged litigation.

The committee majority first found that disbarment was the appropriate sanction for Merdes's violation of his duties of candor and to the public under the ABA Standards.[51] The committee then analyzed the aggravating and mitigating circumstances enumerated in section 9 of the ABA Standards.[52] The committee concluded that

---

[50] The committee majority noted that Merdes Law Office was opened well in advance of the earliest time Merdes's nephew could have joined the firm as an attorney. His nephew graduated from law school in May 2013, and could not have been admitted to the bar earlier than late October or November 2013. Merdes's nephew never actually joined the practice as an attorney. Although he began working as a law clerk at Merdes Law Office in the summer of 2013, he left in February 2016 without having passed the bar.

[51] *See* ABA STANDARDS § 4.61 (providing that "[d]isbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer"); *id.* § 5.11(b) (providing that "disbarment is generally appropriate when . . . a lawyer engages in . . . intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice").

[52] *See id.* § 9.1 (providing that "[a]fter misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction (continued...)

-17- 7627

Merdes's misconduct was aggravated by his substantial experience in the law[53] and by the fact that his actions showed a dishonest or selfish motive.[54] But the committee found five mitigating factors that justified reducing the level of discipline that should be imposed.[55] First, the committee found that Merdes did not have a prior disciplinary record.[56] Second, the committee found that Merdes had self-reported the trial court findings and our opinions to the Bar.[57] Third, the committee found "that for most of his practice. . . Merdes has been a conscientious and careful practitioner" with a "good reputation."[58] Fourth, it found that because the superior court had ordered Merdes to pay treble damages, the "imposition of other penalties or sanctions" was a mitigating factor.[59] And finally, the committee concluded that because Merdes paid the entire judgment to

---

(...continued)
to impose."); *see also id.* § 9.21 ("Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.").

[53]    *Id.* § 9.22(i) (providing that "substantial experience in the practice of law" is an aggravating factor).  Merdes had been a member of the Alaska Bar since 1989.

[54]    *Id.* § 9.22(b) (providing that "dishonest or selfish motive" is an aggravating factor).

[55]    *Id.* § 9.31 ("Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.").

[56]    *Id.* § 9.32(a) (stating that "absence of a prior disciplinary record" may be considered as mitigating factor).

[57]    *Id.* § 9.32(e) (stating that "full and free disclosure to disciplinary board or cooperative attitude toward proceedings" may be considered as mitigating factor).

[58]    *Id.* § 9.32(g) (stating that "character or reputation" may be considered as mitigating factor).

[59]    *Id.* § 9.32(k).

Leisnoi after our 2017 opinion,[60] the mitigating factor of "timely good faith effort to make restitution or to rectify consequences of misconduct applie[d]."[61]

After weighing both the aggravating factors and mitigating factors, the committee determined that "[a]lthough disbarment is an appropriate sanction under ABA Standards" the balance weighed in favor of a lighter sanction. The committee majority recommended that the Board issue "a public reprimand and/or suspension."[62] The dissenting member concluded that "the appropriate sanction would be a public reprimand."

Merdes appealed the committee's findings of fact and conclusions of law to the Board.[63] The Board held oral argument over two days in early 2021 and subsequently adopted the committee's findings of fact and conclusions of law including its analysis of the applicable aggravating and mitigating factors. But the Board concluded that the committee's recommended sanction was too lenient, and instead recommended that we suspend Merdes from the practice of law for one year and require

---

[60]    *See Leisnoi II*, 410 P.3d 398, 413-14 (Alaska 2017) (affirming the superior court's award of treble damages to Leisnoi).

[61]    ABA STANDARDS § 9.32(d).

[62]    "The Board of Governors of the Bar, when meeting to consider grievance and disability matters, [is] known as the Disciplinary Board of the Alaska Bar Association (hereinafter the 'Board')." Alaska Bar R. 10(a). Area hearing committees submit written reports containing findings of fact, conclusions of law, and recommendations to the Board. *See* Alaska Bar R. 12(i)(4). The Board may accept those reports or adopt its own, and may impose reprimands or forward its own findings of fact, conclusions of law, and recommendations to this court for more serious discipline. *See* Alaska Bar R. 10(c)(5)-(8).

[63]    Parties may appeal the area hearing committee's findings of fact, conclusions of law and recommended sanction to the Board. *See* Alaska Bar R. 25(f).

him to pay $3,000 in costs and attorney's fees.[64]   Merdes appeals the Bar's recommendation.

## III.   STANDARD OF REVIEW

"We independently review the entire record in attorney disciplinary proceedings, though findings of fact made by the Board are entitled to great weight. When the Board's findings of fact are appealed, the respondent attorney bears the burden of proof in demonstrating that such findings are erroneous."[65]   "In determining the appropriate sanctions, we apply our independent judgment."[66]

## IV.   DISCUSSION

### A.   Merdes Failed To Demonstrate That The Board's Findings Of Fact Were Erroneous.

Merdes challenges the factual findings made by the area hearing committee and adopted by the Board.  He specifically challenges the Board's findings that there was clear and convincing evidence that he "intended to hinder or delay repayment to Leisnoi" and that he misrepresented his firm's ability to pay Leisnoi.  He contends that his belief that he had left Merdes & Merdes with a valid quantum meruit claim, evidenced by his rejection of Stratman's offer to buy the claim, showed that he had not intended to defraud Leisnoi.  He further asserts that his representation to Leisnoi that Merdes & Merdes did not have the funds available to pay Leisnoi was accurate.

---

[64]   Alaska Bar Rule 16(c)(3) provides in pertinent part "[w]hen a finding of misconduct is made, in addition to any discipline listed . . . the Court or the Board may impose. . . payment of a costs and fees assessment."

[65]   *In re Disciplinary Matter of Ivy*, 350 P.3d 758, 761 (Alaska 2015) (quoting *In re Disciplinary Matter of Miles*, 339 P.3d 1009, 1018 (Alaska 2014)).

[66]   *In re Disciplinary Matter of Stepovich*, 386 P.3d 1205, 1208 (Alaska 2016); *see also* Alaska Bar R. 22(r) ("The Court will decide . . . the type of discipline to be imposed . . . .").

The record supports the Board's conclusions that the transfers from Merdes & Merdes were fraudulent. Observing that AS 34.40.010 states that "a conveyance . . . made with the intent to hinder, delay, or defraud creditors . . . is void," the Board concluded that there was clear and convincing evidence that Merdes had intended to hinder or delay Leisnoi's recovery.[67] When analyzing fraudulent conveyance claims, we have stated:

> "The intent to defraud through a conveyance is a question of fact usually to be proved by circumstantial evidence. Many circumstantial factors can indicate the existence of fraud. Badges of fraud must be viewed within the context of each particular case." Typical badges of fraud include: "(1) inadequate consideration, (2) transfer in anticipation of a pending suit, (3) insolvency of the transferor, (4) failure to record, (5) transfer encompasses substantially all the transferor's property, (6) transferor retains possession of the transferred premises, (7) transfer completely depletes transferor's assets, and (8) relationship of the parties."[68]

As the superior court concluded in 2015, the record shows multiple badges of fraud. Greisen testified that $3,099,910 was transferred from Merdes & Merdes to Merdes personally and Merdes Law Office with inadequate consideration. The transfer of assets from Merdes & Merdes to Merdes Law Office began almost immediately after Leisnoi filed its appeal in 2010. Merdes's wife testified that all clients transferred to Merdes Law Office effective February 1, 2013 — the same day we ordered Merdes & Merdes to

---

**67**    *See also* Alaska R. Prof. Conduct 9.1(f) (defining "fraud" as "conduct (including acts of omission) performed with a purpose to deceive").

**68**    *Shaffer v. Bellows*, 260 P.3d 1064, 1068-69 (Alaska 2011) (first quoting *Nerox Power Sys., Inc. v. M-B Contracting Co.*, 54 P.3d 791, 796 (Alaska 2002) (footnote omitted); and then quoting *Gabaig v. Gabaig*, 717 P.2d 835, 839 n.6 (Alaska 1986)).

return $643,760 to Leisnoi.[69]   The transfers encompassed nearly all of Merdes & Merdes's property and depleted its assets, eventually leaving Merdes & Merdes insolvent.  She also testified that Merdes Law Office retained the same insurance, office equipment, vendor contracts, employees, address, and phone number as Merdes & Merdes.  Lastly, Merdes himself agreed that the relationship between Leisnoi and Merdes had become personal and caused Merdes a great deal of stress and anger.  The Board's finding of fraud is well supported by the record.[70]

The record supports the Board's conclusions that Merdes & Merdes could have paid Leisnoi and that Merdes misrepresented the firm's ability to pay Leisnoi. Merdes testified that he told Leisnoi on February 1, 2013 that Merdes & Merdes did not have sufficient assets to pay Leisnoi.  Greisen testified that Merdes & Merdes had sufficient contingent assets which could have been used to pay Leisnoi on February 1, 2013.  Merdes's wife acknowledged that all of Merdes & Merdes's clients transferred after February 1, and on February 15, 2013 Merdes Law Office deposited a check of $115,500 into its accounts as settlement from one of the transferred cases.

An attorney appealing the Board's findings of fact "bears the burden of proof in demonstrating that such findings are erroneous."[71]   Merdes argues that the evidence of his belief in the quantum meruit claim outweighs the evidence of fraud and misrepresentation.  We disagree.  Evidence of a single offer from Stratman, a longtime

---

[69]     *Leisnoi I*, 307 P.3d 879, 894 (Alaska 2013) (holding that Leisnoi was entitled to recover the $643,760 it had paid to Merdes & Merdes).

[70]     *See Gabaig*, 717 P.2d at 839 ("The weight accorded the badges depends on the facts of each case; the badges are merely evidentiary facts tending to prove or disprove the ultimate fact — whether fraud was intended.").

[71]     *In re Disciplinary Matter of Miles*, 339 P.3d 1009, 1018 (Alaska 2014) (quoting *In re Disciplinary Matter of Rice*, 260 P.3d 1020, 1027 (Alaska 2011)).

adversary of Leisnoi with a desire to continue litigating against Leisnoi, is not persuasive. Merdes acknowledged that Stratman had a vendetta against Leisnoi, and he understood the offer as Stratman's attempt to try to relitigate his case against Leisnoi. This sole offer is the only support Merdes offered to show that his claim had value. If Merdes had truly believed in the value of his quantum meruit claim, he could have offered to post a bond to be repaid upon the settlement of that claim. But he did no such thing. "[W]e ordinarily will not disturb findings of fact made upon conflicting evidence."[72] Merdes has failed to carry his burden of proving the Board's findings to be erroneous. We agree with the Board that Merdes violated Professional Conduct Rule 8.4(c) by "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation."

## B.    The Sanctions Recommended By The Board Are Too Lenient.

The Board recommends a one-year suspension from the practice of law and payment of $3,000 in costs and fees. We use our independent judgment in applying the three-step analysis to determine the correct sanction.[73] We first consider "(1) the duty or duties violated; (2) the attorney's mental state regarding these violations; and (3) the 'extent of the actual or potential injury' involved."[74] Next, "we determine what sanctions the American Bar Association's Standards for Imposing Lawyer Sanctions recommend[s]" for the misconduct.[75] Lastly, we consider whether the "aggravating or

---

[72]     *Id.* (quoting *In re Rice*, 260 P.3d at 1027) (alteration in original).

[73]     *See id.* at 1019.

[74]     *Id.* at 1020 (quoting *In re Disciplinary Matter of Shea*, 273 P.3d 612, 622 (Alaska 2012)).

[75]     *Id.*

mitigating factors affect the recommended sanctions."[76]

### 1. Ethical duties violated, attorney's mental state, and the extent of the injury involved

#### a. Ethical duties violated

We first consider the ethical duties Merdes violated.[77] The Board found Merdes breached his duty of candor to his client under ABA Standards § 4.6. The duty of candor is breached when the "lawyer engages in fraud, deceit, or misrepresentation directed toward a client."[78] The Board also found that Merdes breached his duty to the public under ABA Standards § 5.1. The duty to the public is breached when the lawyer is "involv[ed in the] commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit, or misrepresentation."[79]

The Board found that Merdes "breached his duties to his former client, Leisnoi, when he transferred funds from Merdes & Merdes to Merdes Law Office without consideration and to hinder or delay Leisnoi's collection." The Board further found that "[h]e breached a duty to [both] his former client and to the public when he told Leisnoi[] that Merdes & Merdes no longer had assets to pay Leisnoi after he deliberately transferred assets from [the firm] to keep them from Leisnoi." And it found that Merdes "violated duties owed to the public when he fraudulently conveyed assets and failed to maintain the standards of personal integrity upon which the community relies."

---

[76] *Id.* (quoting *In re Shea*, 273 P.3d at 622).

[77] *Id.* at 1019-20.

[78] ABA STANDARDS § 4.6.

[79] *Id.* § 5.1.

We give great weight to the Board's factual findings.[80] Here, the Board found that Merdes fraudulently transferred money from his old firm to avoid paying his former client and misrepresented that firm's ability to pay the client; it then correctly determined that Merdes breached his duty to his client under ABA Standards § 4.6 and his duty to the public under § 5.1.

### b. Attorney's mental state

The Board concluded that Merdes had acted with "intent." "Intent" is the most culpable mental state under the ABA Standards and is defined as "the conscious objective or purpose to accomplish a particular result."[81] In other disciplinary actions we have found it "permissible to infer that an accused intends the natural and probable consequences of his or her knowing actions."[82] Merdes acknowledged that the accusations Leisnoi made about his father made him very angry and caused him significant distress. When Leisnoi appealed the superior court's writ of execution, Merdes began transferring funds from Merdes & Merdes to himself and Merdes Law Office. All of Merdes & Merdes's clients were transferred immediately after our 2013 opinion and after Merdes told Leisnoi that Merdes & Merdes did not have the ability to pay.[83] The Board correctly found that Merdes's mental state was "that of intent" and his "true intent was to strip Merdes & Merdes of recoverable assets and to thwart Leisnoi."

---

[80] *See In re Disciplinary Matter of Rice*, 260 P.3d 1020, 1027 (Alaska 2011) ("Though this court has the authority, if not the obligation, to independently review the entire record in disciplinary proceedings, findings of fact made by the Board are nonetheless entitled to great weight." (quoting *In re Disciplinary Matter of West*, 805 P.2d 351, 353 n.3 (Alaska 1991))).

[81] ABA STANDARDS § III, Definitions.

[82] *In re Disciplinary Matter of Triem*, 929 P.2d 634, 648 (Alaska 1996).

[83] *Leisnoi I*, 307 P.3d 879 (Alaska 2013) (published Feb. 1, 2013).

### c.    Actual and potential injury

The actual injury that resulted from Merdes's ethical violations was considerable.[84]  As the Board observed, Leisnoi sustained actual serious injury:  it "was deprived of a substantial sum of money for a period of years" and "had to engage in prolonged litigation before it could recoup its monies."  And it was deprived of the significant sum at a time when the corporation was attempting to recover from serious financial difficulty.  If Leisnoi had relied on Merdes's misrepresentation, it may never have recovered its money.

In addition to causing Leisnoi injury, Merdes's actions damaged the legal profession.  We have previously observed that "duplicitous act[s] by a member of the Bar . . . damage[] the reputation of the legal profession and the legal system at large."[85]

### 2.    ABA recommended sanctions

The ABA Standards provide that when an attorney "engages in . . . intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice," then disbarment is appropriate.[86]  Moreover, when an attorney lacks candor and "knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or

---

[84]    We have previously observed that whether the injury was "actual or potential" is of no particular consequence under the ABA Standards. *In re Disciplinary Matter of Stepovich*, 386 P.3d 1205, 1211 (Alaska 2016); *see also* ABA STANDARDS § 4.61 (stating that "disbarment is generally appropriate when a lawyer" violates duty of candor and "causes serious injury or potential serious injury"); ABA STANDARDS § 5.11 (stating that "disbarment is generally appropriate when a lawyer" violates duty to public regardless of any actual or potential injury).

[85]    *In re Disciplinary Matter of Miles*, 339 P.3d 1009, 1020 (Alaska 2014).

[86]    ABA STANDARDS § 5.11(b).

potential serious injury to a client," then disbarment is the appropriate sanction.[87] The

Board properly determined that Merdes's misconduct warranted disbarment under the

ABA Standards.

### 3. Aggravating and mitigating factors

The next step under the ABA Standards is to determine whether disbarment

is appropriate by considering aggravating and mitigating factors.[88] The ABA Standards

lists 11 aggravating factors[89] and 13 mitigating factors.[90] We have previously observed

that "we are 'guided but not constrained by the [ABA Standards] and by the sanctions

imposed in comparable disciplinary proceedings.' "[91] And "[t]here is no 'magic formula'

for determining how aggravating and mitigating circumstances affect an otherwise

appropriate sanction. 'Each case presents different circumstances which must be

---

[87] *Id.* § 4.61.

[88] *Id.* § 9.1.

[89] *Id.* § 9.22 (listing the following aggravators: (a) prior disciplinary offense; (b) dishonest or selfish motive; (c) pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of disciplinary proceedings; (f) submission of false evidence; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial legal experience; (j) indifference to making restitution; and (k) illegal conduct).

[90] *Id.* §9.32 (listing the following mitigators: (a) absence of prior disciplinary record; (b) absence of dishonest or selfish motive; (c) personal or emotional issues; (d) good faith effort to make restitution; (e) full disclosure to the Board; (f) inexperience in practice of law; (g) character or reputation; (h) physical disability; (i) mental disability including chemical dependency; (j) delay in disciplinary proceedings; (k) imposition of other penalties; (l) remorse; and (m) remoteness of prior offenses).

[91] *In re Disciplinary Matter of Ford*, 128 P.3d 178, 184 (Alaska 2006) (alteration in original) (quoting *In re Disciplinary Matter of Friedman*, 23 P.3d 620, 625 (Alaska 2001)).

weighed against the nature and gravity of the lawyer's misconduct.' "[92]

The Board concluded that two aggravating factors applied: Merdes acted with a selfish or dishonest motive[93] and he had substantial experience in the law.[94] And the Board concluded that five mitigating factors applied: his absence of a disciplinary record,[95] his full and free disclosure to the disciplinary board,[96] his character and reputation,[97] the imposition of other penalties,[98] and his timely good faith effort to make restitution or to rectify the consequences of his misconduct.[99] We will first consider each of the aggravators and then we will consider the mitigators.

### a. The "selfish or dishonest motive" aggravator

The Board did not specify the reasons it concluded that the "selfish or dishonest motive"[100] aggravator applied. But the record shows that Merdes fraudulently conveyed more than a million dollars from Merdes & Merdes to his new firm and over two million dollars to himself to keep the money his old firm owed to Leisnoi. His reasons for doing so were his belief that his father had earned the money and his anger

---

[92]     *In re Disciplinary Matter of Stepovich*, 386 P.3d 1205, 1211 (Alaska 2006) (quoting *In re Friedman*, 23 P.3d at 633).

[93]     ABA STANDARDS § 9.22(b).

[94]     *Id.* § 9.22(i).

[95]     *Id.* § 9.32(a).

[96]     *Id.* § 9.32(e).

[97]     *Id.* § 9.32(g).

[98]     *Id.* § 9.32(k).

[99]     *Id.* § 9.32(d).

[100]    *Id.* § 9.22(b).

over the insults Leisnoi had levied against his father. We conclude that the Board properly found "selfish and dishonest motive" as an aggravating factor.

### b. The "substantial experience in the law" aggravator

Merdes's substantial experience in the law also aggravates his misconduct.[101] As the Board noted, Merdes has been a practicing member of the Alaska Bar since 1989. In 2013, Merdes had practiced for roughly 24 years. An attorney with such significant legal experience should have recognized the ethical issues raised by transferring funds from Merdes & Merdes to Merdes Law Office, particularly after being advised by Bar Counsel that it "would likely be considered fraudulent." There is no dispute that Merdes had "substantial experience in the law"; the Board properly applied this aggravating factor.

### c. The "refusal to acknowledge wrongful conduct" aggravator

After independently reviewing the facts,[102] we conclude that a third factor also aggravates Merdes's misconduct. ABA Standards § 9.22(g) provides that "refusal to acknowledge wrongful nature of conduct" is an aggravating factor. The superior court found that Merdes fraudulently conveyed Merdes & Merdes's assets to prevent Leisnoi from successfully collecting the money it was owed. We affirmed the superior court's finding in 2017.[103] After four days of hearings, the area hearing committee also concluded that Merdes had deceptively and unfairly "capitaliz[ed] . . . Merdes Law Office with the assets of Merdes & Merdes to prevent or delay payment of the debt owed

---

[101]    *See id.* § 9.22(i).

[102]    *In re Disciplinary Matter of Rice*, 260 P.3d 1020, 1030 (Alaska 2011) ("We apply our independent judgment when determining appropriate attorney sanctions.").

[103]    *Leisnoi II*, 410 P.3d 398 (Alaska 2017).

to Leisnoi" and that the transfer of assets amounted to a fraudulent conveyance. After review of the record and oral argument, the Board adopted the committee's conclusion. Yet, in his brief to this court, Merdes maintains that he believed he had left his old firm with a valuable quantum meruit claim. Although Merdes paid the damages ordered by the superior court, he has never acknowledged — not at any point during or following the litigation with Leisnoi or during the disciplinary proceedings at issue here — the wrongful or harmful nature of his misconduct. Throughout the proceedings Merdes continued to assert that the judicial decisions adverse to his position were "dead wrong." Therefore we conclude that this aggravator applies.

### d. The "absence of a prior disciplinary record" mitigator

The Board properly found the "absence of a prior disciplinary record" as a mitigating factor.[104] Merdes has practiced law since 1989 and has not previously been the subject of Bar discipline. Although Merdes's misconduct in this instance was egregious, it was not part of a pattern.

### e. The "character and reputation" mitigator

Several attorneys testified that they knew Merdes to be fair and honest. Van Goor testified that his impression was that Merdes "wanted to do the right thing." Based upon their testimony, the Board appropriately concluded that Merdes's "character or reputation"[105] was a mitigating factor.

### f. The "imposition of other penalties" mitigator

The Board found that the superior court's award of treble damages to

---

[104] *See* ABA STANDARDS § 9.32(a).

[105] *See id.* § 9.32(g).

Leisnoi was an "imposition of other penalties or sanctions."[106] The superior court ordered Merdes and his firms to pay Leisnoi a final award of $1,931,280.[107] We agree with the Board that imposing additional damages over the $643,760 plus interest Merdes & Merdes was ordered to return to Leisnoi in 2013[108] was an additional penalty.[109]

### g. The "good faith effort to make restitution" mitigator

The Board concluded that Merdes's timely payment of the treble damages showed a "timely good faith effort to make restitution."[110] At oral argument, Bar Counsel stated that Merdes had paid $2,500,000 in restitution to Leisnoi. We agree that Merdes's payment of such a substantial sum of money on April 23, 2018, approximately six months after the publication of our 2017 opinion, was a timely good faith payment of restitution. The Board properly applied this mitigator.[111]

### h. The "full and free disclosure" mitigator

The Board found that Merdes's "[f]ull and free disclosure to [the] disciplinary board" was a mitigating factor.[112] The Board credited Merdes for reporting to the area hearing committee the trial court's findings and conclusions which ordered

---

[106]     *See id.* § 9.32(k).

[107]     *Leisnoi II*, 410 P.3d at 403.

[108]     *See Leisnoi I*, 307 P.3d 879, 894 (Alaska 2013).

[109]     *But see In re Disciplinary Matter of Stockler*, 457 P.3d 551, 553, 558 (Alaska 2020) (approving parties' stipulation to discipline that did not apply "imposition of other penalties" mitigator despite respondent's serving prison time and paying fine).

[110]     ABA STANDARDS § 9.32(d); *but see id.* § 9.4(a) (stating that "forced or compelled restitution" is neither an aggravating or mitigating factor).

[111]     *Leisnoi II*, 410 P.3d at 398 (published Nov. 2017).

[112]     *See id.* § 9.32(e).

him to pay Leisnoi treble damages and our published 2017 opinion affirming the trial court.[113] But the Board also found some of Merdes's statements and representations not credible. The Board did not find credible Merdes's claim that he started Merdes Law Office to welcome his nephew as an attorney. Nor did it find credible Merdes's claim that he transferred assets to the new office with the belief that he was leaving Merdes & Merdes with a valuable quantum meruit claim. And although Merdes provided the area hearing committee with the superior court decision and orders and our published opinion, these documents were public and easily obtainable. In light of the Board's conclusion that much of Merdes's evidence was not credible, and the limited weight we give to his provision of public court decisions to the Bar, we conclude that this mitigator does not apply to Merdes's case.

### 4. Appropriate sanction — four year suspension and payment of $3,000 in costs and fees

The Board assigned great weight to the mitigating factors and recommended that we suspend Merdes for one year and order him to pay $3,000 in costs and fees. But the Board's recommended sanction is too lenient. Merdes transferred millions of dollars from his old firm for the sole purpose of defrauding a former client and a legitimate creditor. He did so intentionally — the most blameworthy mental state under the ABA Standards — as the culmination of a years-long personal feud with Leisnoi. He deceitfully misrepresented Merdes & Merdes's ability to pay Leisnoi at a time when the firm had sufficient assets to do so. Merdes's misconduct demonstrates a lack of integrity and a complete disregard for the standards and duties required by the legal profession.

---

[113] *See Leisnoi II*, 410 P.3d at 413-14 (affirming superior court's award of treble damages to Leisnoi).

Lawyers must act with integrity.[114] We have previously emphasized that because "[s]ociety allows the legal profession the privilege of self-regulation . . . . it is of the utmost importance that the public have confidence in the profession's ability to discipline itself."[115] Therefore "our paramount duty[] 'lies in the assurance that the public will be protected in the performance of the high duties of . . . attorney[s].' "[116] Yet Merdes's conduct in this case "contributes to the perpetuation of the stereotype of lawyers as unscrupulous and unprincipled."[117] At oral argument Bar Counsel acknowledged that the Board struggled to recommend a sanction in this case and ultimately determined that Merdes's actions represented a "one-off situation" that was the result of "family pride [and] hostility towards his . . . former client." That may be so, but "[o]ur primary concern must be the fulfillment of proper professional standards, whatever the unfortunate cause, emotional or otherwise for the attorney's failure to do so."[118] Merdes's conduct warrants a four-year suspension and $3,000 payment of costs and fees pursuant to Alaska Bar Rule 16(c)(3).

## V.   CONCLUSION

Ward Merdes is suspended from the practice of law for four years, to take effect 30 days from the date of this opinion. Merdes is also required to pay the applicable $3,000 costs and fees assessment pursuant to Alaska Bar Rules 16(c)(3).

---

[114]   *See In re Disciplinary Matter of Ivy*, 374 P.3d 374, 388 (Alaska 2016).

[115]   *In re Disciplinary Matter of Buckalew*, 731 P.2d 48, 55 (Alaska 1986).

[116]   *Id.* at 54 (last two alterations in original) (quoting *In re Possino*, 689 P.2d 115, 120 (Cal.1984)).

[117]   *In re Disciplinary Matter of Triem*, 929 P.2d 634, 649 (Alaska 1996).

[118]   *In re Buckalew*, 731 P.2d at 54 (quoting *In re Possino*, 689 P.2d at 120).